954 P.2d 93 (1997)
1998-NMCA-029
In re the FORFEITURE OF ($28,000.00) IN UNITED STATES CURRENCY IN VARIOUS DENOMINATIONS and a.380 Handgun.
CITY OF ALBUQUERQUE, Plaintiff-Appellant,
v.
Samuel HAYWOOD, Claimant-Appellee.
No. 17674.
Court of Appeals of New Mexico.
December 22, 1997.
Certiorari Denied February 9, 1998.
*94 Mark L. Drebing, Legal Counsel for the Albuquerque Police Department, Albuquerque, for plaintiff-appellant.
Lynn Allan, Albuquerque, for claimant-appellee.

OPINION
BUSTAMANTE, Judge.
1. This case is an action for the forfeiture of money and a handgun seized by the City of Albuquerque (the City) from an automobile owned by Samuel Haywood (Haywood). The City's Petition for Forfeiture alleged that the $28,000 in U.S. currency and the.380 caliber handgun were fruits or instrumentalities of crime subject to seizure and forfeiture under the Controlled Substances Act. See NMSA 1978, §§ 30-31-34(F) (1989) and 30-31-35(B)(4) (1981). The district court entered Judgment based on its suppression of the currency and ordered the $28,000 returned to Haywood. Other evidence adduced in the proceeding indicated that the handgun did not belong to Haywood.
2. On appeal, the City raises two issues: (1) whether the trial court erred by suppressing the currency as the fruit or consequence *95 of an illegal search of the passenger compartment of Haywood's vehicle; and (2) whether the trial court erred in denying the City's motion in limine to prohibit Haywood from testifying at trial after invoking his Fifth Amendment privilege against self-incrimination during discovery. Finding that the evidence of the currency was properly suppressed, we affirm. We do not reach the second issue, since the first is dispositive. See Does v. Roman Catholic Church of Archdiocese of Santa Fe, Inc., 1996 NMCA 094, ¶ 12, 122 N.M. 307, 924 P.2d 273 ("[C]ourts traditionally do not reach out to decide issues unnecessarily.").

DISCUSSION-SUPPRESSION OF THE CURRENCY

A. Facts.
3. Haywood was driving alone in Albuquerque on February 13, 1993. At approximately 7:00 p.m., Haywood's car was stopped by Albuquerque Police Department (APD) Officer Spain. Officer Spain testified that he stopped the vehicle only because there was no license plate displayed on the rear bumper and he could not tell if there was any type of license plate or temporary tag in the rear window because the windows of the vehicle were darkly tinted. Haywood immediately pulled his vehicle over to the side after the officer engaged his vehicle's emergency lights and initiated a short siren burst. As he approached the vehicle and was about two to three feet from the rear of Haywood's car, the officer observed through the dark tint what appeared to be a temporary sticker in the left rear window of the vehicle.
4. There was conflicting testimony concerning the officer's approach to the stopped vehicle. Officer Spain testified that he was the only officer present at the time and that as he approached he saw the driver making furtive movements within the car which aroused his suspicions. This caused him to approach the car on the passenger side and open the door. A second officer, Officer Accardi, testified that he arrived within seconds of Officer Spain's stopping Haywood's car, just as Officer Spain was getting ready to approach the vehicle. Officer Accardi testified the rear window was so darkly tinted the occupant(s) could not be seen through it, and that Spain went directly to the driver's window. The trial court found, contrary to Officer Spain's testimony, that the dark tint of the rear windows did not allow Officer Spain to see any movement (furtive or otherwise) made by the driver. See State v. Roybal, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992) ("It was for the trial court as fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay.").
5. When Officer Spain came into contact with Haywood, he requested to see Haywood's license and registration which Haywood produced. Without looking at the documents, Officer Spain immediately asked Haywood whether he had any guns or knives in the car. Haywood readily admitted that there was a handgun in the car beneath his feet. At the officer's request, Haywood exited the car where an officer conducted a pat-down search. Officer Spain then retrieved the handgun from the car. As he was retrieving the gun, Officer Spain observed a box of shotgun shells, binoculars, and a ski mask in plain view inside the vehicle. Officer Spain testified that seeing the binoculars and ski mask reminded him that several armed robberies had occurred recently in the neighborhood.
6. While Haywood was outside the car, Officer Spain requested that Officer Accardi search the passenger compartment for another weapon. As Officer Accardi began the search of the passenger compartment, Haywood seemed nervous or agitated, at which point he was handcuffed for about 20-30 minutes. Officer Accardi testified that when he looked into the open passenger side window, he saw a white plastic bag that appeared to have money in it. The District Court, however, found that the currency was wrapped in a double white plastic bag which was not in plain view until the officer opened the passenger door and searched the area. It also found that the contents of the bag were not recognizable as currency until the officer opened the bag. No second gun was found.
7. After the currency was found, the officers requested a narcotics K-9 unit respond to the scene. Two narcotics detectives arrived *96 and a narcotics dog, "Boz", was released in the vehicle. Boz "keyed" on the bag containing the currency. In response to police questions, Haywood gave varying, contradictory statements about where he obtained the money and to whom it belonged. Haywood was wearing a digital pager and was frequently being paged during the time he was with the officers. The narcotics detectives on the scene thought Haywood was a known narcotics dealer, based on his reputation within APD, but they had no personal knowledge concerning his alleged narcotics dealing. Prior to the February 13, 1993 incident, Haywood had admitted to an APD officer that he was "slinging" or selling cocaine, however, that officer was not involved in the February 13, 1993 incident.
8. After approximately two hours, Haywood and his vehicle were released. The City retained the currency and the handgun. No controlled substances were found on Haywood or in the car. Besides the currency and the handgun, no other items were taken from Haywood's car or admitted into evidence at the hearings, including the box of shotgun shells, ski, mask, and binoculars. No photographs of the scene were admitted into evidence at the hearings, mainly due to the City's untimely submission of them. Haywood was not charged with any crimes or given any written citation. The City filed its Petition for Forfeiture of the $28,000 in currency and a handgun, alleging that the money and gun were subject to forfeiture as the fruit or instrumentality of a crime in violation of the Controlled Substances Act.

B. Legal Analysis of the Suppression Issue.
9. "The Fourth Amendment of the United States Constitution, which is made applicable to the states through the Fourteenth Amendment, protects citizens against unlawful searches and seizures." In re Forfeiture of $14,639 in U.S. Currency, 120 N.M. 408, 412, 902 P.2d 563, 567 (Ct.App.1995) (quoting State v. Garcia, 76 N.M. 171, 174, 413 P.2d 210, 212 (1966)). Evidence that is unconstitutionally obtained is inadmissible at trial under the "exclusionary rule," the primary purpose of which is to "deter future unlawful police conduct." State v. Ramirez, 89 N.M. 635, 639, 556 P.2d 43, 47 (Ct.App. 1976) (quoting United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974)), overruled on other grounds by Sells v. State, 98 N.M. 786, 788, 653 P.2d 162, 164 (1982). The object of forfeiture proceedings under the Controlled Substances Act is to penalize for the commission of an offense against law. As such, forfeiture proceedings are "quasi-criminal in character," and the Fourth Amendment exclusionary rule is applicable to them. See In re One 1967 Peterbilt Tractor, 84 N.M. 652, 654, 506 P.2d 1199, 1201 (1973); In re Forfeiture of $14,639 in U.S. Currency, 120 N.M. at 412, 902 P.2d at 567.
10. We analyze the legality of the initial stop and the search and seizure of the currency as a mixed question of law and fact, using the substantial evidence standard for review of the facts and a de novo review of the trial court's application of the law to those facts. See State v. Werner, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994); State v. Attaway, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994).
11. We first examine whether the initial stop of Haywood's vehicle was lawful. Haywood's vehicle was stopped because it appeared to have no license plate or temporary tag. New Mexico law requires that the registration plate of a vehicle must be attached to the rear of the vehicle "in a place and position so as to be clearly visible," and "maintained ... in a condition to be clearly legible." NMSA 1978, § 66-3-18(A) (1985); see also NMSA 1978, § 66-3-6 (1989). Temporary (registration) tags must satisfy certain requirements as to contents and "[n]o temporary permit is valid until affixed to the vehicle for which it is validated in a manner prescribed by the [Motor Vehicle] division." Section 66-3-6(D). A peace officer discovering that a registration plate is illegible, may issue a citation to the owner. NMSA 1978, § 66-3-17(C) (1981, prior to the 1995 amendment); cf. United States v. Bongiorno, 444 F.2d 120, 120 (10th Cir.1971) (where license plates were fastened to the car only at one corner of the plates, were loose, dangling and swinging in violation of 1953 NMSA, Section *97 64-3-13 (similar to 1978 NMSA, Section 66-3-18), the officer, having observed the commission of a criminal offense, was acting within his rights in stopping the car).
12. In this case, the windows were so darkly tinted that the temporary tag was not visible until the vehicle was stopped, the officer had exited his vehicle, and was approaching the driver, within two to three feet from the rear of the stopped vehicle. Under the circumstances of this case, we conclude that it was not arbitrary for Officer Spain to make a traffic stop to "check to see if there was a license plate of some sort" for the vehicle. See State v. Reynolds, 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995) (citing Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (the purpose of the Fourth Amendment is to safeguard against arbitrary invasions)).
13. We next examine whether the continuing seizure of Haywood was reasonable after the temporary tag became visible. In Reynolds, the New Mexico Supreme Court held that generally, whenever a driver is validly stopped for whatever reason, it is reasonable for the officer to ask for identification (driver's license) and proof of insurance. 119 N.M. at 388, 890 P.2d at 1320 ("If a driver invites the attention of a police officer by engaging in unsafe driving conduct, or whenever an officer is reasonably called upon to make contact with a driver, the officer has the right to know with whom he is talking and may check to see that the driver is both licensed and driving a car that is registered and insured."). Pursuant to Reynolds, we hold that the de minimis detention of Haywood for the purpose of asking for identification was not unreasonable and did not violate the Fourth Amendment of the United States Constitution or Article II, Section 10 of the New Mexico Constitution, even though Officer Spain saw the temporary tag prior to contacting Haywood. 119 N.M. at 388, 890 P.2d at 1320 (privacy interest in driver's license and registration documents is nonexistent as to the police officer, and the detention period with regard to these documents is de minimis).
14. Reynolds only addressed the reasonableness of a de minimis detention to check driver documentation after a lawful stop. Haywood was asked for driver documentation and he was additionally detained by Officer Spain's immediate second question, whether Haywood had any weapons in the car. Thus, the central issue before us is whether this additional question and subsequent detention and search were permissible.
15. Under Werner, "[a]n officer who makes a valid investigatory stop may briefly detain those he suspects of criminal activity to verify or quell that suspicion." 117 N.M. at 317, 871 P.2d at 973. "The scope of activities during [this] investigatory detention must be reasonably related to the circumstances that initially justified the stop." Id. (relying on Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)) (emphasis added); accord State v. Bidegain, 88 N.M. 466, 469, 541 P.2d 971, 974 (1975) ("A police officer making a lawful stop of a motorist is not precluded from making reasonable inquiries concerning the purpose or purposes for the stop." (emphasis added)); United States v. Perez, 37 F.3d 510, 513 (9th Cir.1994) ("Questions asked during an investigative stop must be `reasonably related in scope to the justification for their initiation.'" (emphasis added, citation omitted)); cf. State v. Flores, 1996 NMCA 059, ¶ 13, 122 N.M. 84, 920 P.2d 1038 ("If the initial suspicion is dispelled, the Terry stop comes to an end and the suspect is free to leave."); State v. Cobbs, 103 N.M. 623, 628, 711 P.2d 900, 905 (Ct.App.1985) ("If ... the rationale for the stop has dissipated, a frisk is impermissible.").
16. Here, Officer Spain could briefly detain Haywood for the purpose of verifying or quelling his suspicion that Haywood was operating a motor vehicle without the proper vehicle registration. Further, under Reynolds, Spain could inquire as to Haywood's driver's license and vehicle registration. But, having failed to establish reasonable suspicion through a showing of specific articulable facts, Officer Spain had no ground for any further questioning or detention of Haywood. See Werner, 117 N.M. at 317, 871 P.2d at 974.
*98 17. Moreover, even if the intrusion was sufficiently minimal that Officer Spain could ask Haywood whether he had a gun in the vehicle, see State v. Bolton, 111 N.M. 28, 42-43, 801 P.2d 98, 112-13 (Ct.App.1990) (permitting momentary extension of lawful detention for purpose of requesting permission to search), Haywood's acknowledgment that he did have a gun in the car did not justify any further detention, or even a protective frisk and search for weapons. Officer Spain had no reason to believe that Haywood's possession of a firearm was unlawful. Officer Spain had no grounds for any further infringement on Haywood's constitutionally protected freedoms of movement and privacy. Accordingly, the subsequent search was unlawful and all evidence obtained thereby was properly suppressed.
18. It is important to note that the only reason Haywood was stopped was the lack of a license plate. Haywood was not driving improperly and Officer Spain had no information connecting Haywood to any illegal drug activity at the time of the stop. Accordingly, we hold the investigation regarding weapons impermissibly exceeded the scope of the officer's rightful authority absent some particularized showing of illicit activity.

CONCLUSION
19. For the aforementioned reasons, we affirm the decision of the district court suppressing the currency evidence.
20. IT IS SO ORDERED.
HARTZ, C.J., and WECHSLER, J., concur.