9 P.3d 70

2000-NMCA-068

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**James N. WILLIAMSON, Defendant–
Appellant.**

No. 20,505.

Court of Appeals of New Mexico.

June 13, 2000.

Certiorari Denied, No. 26,428,
July 31, 2000.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant James Williamson appeals from the judgment and sentence of the district court filed after he entered a no contest plea to two counts of possession of a controlled substance and possession of drug paraphernalia. Defendant contends that the district court improperly denied his motion to suppress physical evidence that the police seized from him after a traffic stop because the officers illegally detained him and because the officers exceeded the scope of their lawful investigation by asking questions about Defendant's possession of drugs. Defendant additionally argues that the illegality of his detention and the impermissible scope of questioning invalidated his consent to be searched. We affirm.

*Facts*

{2} In the early morning hours of October 19, 1997, Officer Michael Seifert observed Defendant's car circumvent closed railroad track gates and cross the railroad track to avoid waiting while an oncoming train passed. When Officer Seifert approached Defendant's car, he detected an odor of alcohol coming from the car. He identified Defendant as the driver and noticed Defendant had reddish, bloodshot, watery eyes. Officer Seifert began his investigation and asked Defendant to perform the "walk and turn," the "one-leg stand," and the horizontal gaze nystagmus (HGN) field sobriety tests. Officer Seifert testified that Defendant did "fairly well" on the first two of these tests; however, he was unable to get Defendant to properly perform the HGN test in that he could not get Defendant's eyes to follow the pen Officer Seifert used in performing the test. Officer Seifert called Officer Richard Owen, a training officer, for assistance in performing the HGN test.

{3} Officer Owen had to wait approximately five minutes for the train to pass before he could safely arrive at the scene. When Officer Owen arrived, Officer Seifert turned his attention to the car's passenger. Sergeant Chuckwood, who had driven by the scene, told Officer Seifert that he believed that the passenger had an outstanding municipal court warrant for her arrest. After verifying the outstanding warrant, Officer Seifert placed the passenger under arrest and searched her fanny pack, finding a white, powdery substance that he believed to be cocaine. He confiscated the substance from the passenger and so advised Officer Owen.

{4} Officer Owen testified that he conducted the HGN test upon Defendant. Although he believed that Defendant had been drinking because of the odor of alcohol and his bloodshot, watery eyes, the clues that Officer Owen received from the HGN test were not sufficient to arrest Defendant. When Officer Owen completed conducting the HGN test, he thought about the degree of Defendant's impairment and whether he should conduct any more tests. At that moment, Officer Seifert notified Officer Owen that he had found what he considered to be an illegal substance in the passenger's possession. Officer Owen then asked Defendant whether Defendant had any illegal substances on his person, and Defendant responded that he did not. Officer Owen testified that he next asked Defendant for consent to search his person, and Defendant consented. In his search, Officer Owen found a film canister containing methamphetamine in Defendant's pocket.

*Legality of Defendant's Detention and Scope of Questioning*

{5} Defendant concedes that Officer Seifert had the authority to stop Defendant for

the commission of a traffic offense and, having reasonable suspicion that Defendant had been drinking, to detain Defendant to perform field sobriety tests. *See State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994); *City of Albuquerque v. Haywood,* 1998–NMCA–029, ¶ 13, 124 N.M. 661, 954 P.2d 93. Defendant contends, however, that once Officer Owen completed the HGN test, he was no longer entitled to detain Defendant and Defendant's continued detention became unreasonable, amounting to a de facto arrest without probable cause. Defendant also argues that Officer Owen exceeded the scope of permissible inquiries when he asked Defendant about drugs after he conducted the HGN test and decided that the results did not justify an arrest.

**{6}** We analyze Defendant's arguments in accordance with our Supreme Court's analysis in *Werner.* Under *Werner,* we examine, as a matter of law, the totality of the circumstances to determine whether the officers illegally detained Defendant and whether Officer Owen impermissibly expanded his scope of inquiry. *See Werner,* 117 N.M. at 317, 871 P.2d at 973. In doing so, we view the facts in the manner most favorable to the State, indulging in all reasonable inferences supporting the order and disregarding inferences or evidence to the contrary. *See id.* This analysis contemplates that we balance the character of the officers' intrusion upon Defendant's personal liberty and the justification for the intrusion. *See id.*

{7} Defendant directs his arguments to the justification for his detention, arguing that Officer Owen no longer had reasonable suspicion to detain him after completing the HGN test. Specifically, Defendant argues that Officer Owen illegally detained him and exceeded the scope of the investigation when Officer Owen inquired about drugs. *See id.* at 317–19, 871 P.2d at 973–75.

**{8}** Under Fourth Amendment standards, when a law enforcement officer makes a lawful stop, the officer may conduct an investigation reasonably related to the circumstances that gave rise to the officer's reasons for the stop. *See id.* at 317, 871 P.2d at 973 ("The scope of activities during an investigatory detention must be reasonably related to the circumstances that initially justified the stop.") Thus, an officer stopping a driver for a traffic violation may investigate the circumstances of the violation. The officer may expand this investigation if "the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot." *State v. Taylor,* 1999–NMCA–022, ¶ 20, 126 N.M. 569, 973 P.2d 246. Hence, when an officer investigating a traffic violation has a reasonable and articulable suspicion that the driver is impaired, the officer may detain the driver to investigate the officer's suspicions. The officer's investigation, of course, is limited to a reasonable inquiry that is designed to satisfy the officer's reasonable suspicions. *See Haywood,* 124 N.M. 661, 954 P.2d 93, 1998–NMCA–029, ¶ 16. Moreover, the officer's investigation of any reasonable suspicion must proceed diligently. *See Werner,* 117 N.M. at 319, 871 P.2d at 975.

**{9}** In the case on appeal, Officer Seifert had lawfully stopped Defendant and reasonably expanded the scope of his investigation to include an investigation of whether Defendant was driving while intoxicated. Officer Seifert's administration of field sobriety tests was reasonably a part of this investigation. Officer Owen did not unreasonably delay the investigation; he arrived approximately five minutes after Officer Seifert called him. Both officers could reasonably continue their investigation to satisfy their suspicion of Defendant's impairment, subject, of course, to the requirement that they conduct the investigation diligently. *See Werner,* 117 N.M. at 319, 871 P.2d at 975 ("The concept of diligence has an aspect of speed or haste.").

{10} The presence of drugs in the car, even though in the passenger's possession, was sufficient to reasonably arouse Officer Owen's suspicion that Defendant also had drugs. *See Taylor,* 126 N.M. 569, 973 P.2d 246, 1999–NMCA–022, ¶ 22 (explaining that scope of investigation can include drugs or alcohol if those subjects "become apparent during [an officer's] interaction[ ] with [a detainee]."); *cf. State v. Bolton,* 111 N.M. 28,

39, 801 P.2d 98, 109 (Ct.App.1990) ("While engaged in legitimate investigative work, the Border Patrol agents did not need to close their eyes to criminal activity unrelated to their principal concern."). Officer Owen's suspicion was reasonable given Defendant's impaired appearance and questionable performance on the HGN tests. Although the sobriety tests did not indicate illegal impairment, the tests nonetheless led to continued suspicion about impairment. *See State v. Flores,* 1996–NMCA–059, ¶ 7, 122 N.M. 84, 920 P.2d 1038 ("Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts."). Therefore, Officer Owen could reasonably expand his questioning of Defendant to inquire if Defendant also had drugs and if Defendant would consent to a search. *See Haywood,* 124 N.M. 661, 954 P.2d 93, 1998–NMCA–029, ¶ 15 (explaining that the purpose of an investigative stop can be expanded by specific, articulable facts that cause an officer to reasonably suspect criminal activity).

{11} As to Officer Owen's detention of Defendant, the time between the completion of the HGN test and Officer Owen's inquiry and search was brief. The detention in question lasted no longer than the time it took for Officer Owen to deliberate about the test results before Officer Seifert discovered drugs on the passenger and notified Officer Owen. The brief time period met the requirements of diligence; the stop in its entirety lasted approximately ten minutes. *See Werner,* 117 N.M. at 319, 871 P.2d at 975 (holding that investigation was not conducted with sufficient haste when the defendant was detained for over forty-five minutes). As to Officer Owen's questions about drugs, Officer Seifert's discovery of drugs on the passenger was sufficient to create a reasonable suspicion that Defendant also had drugs. Thus, the change in the scope of inquiry was permissible and the detention was sufficiently brief.

{12} We do not agree with Defendant that, under *State v. Eli L.,* 1997–NMCA–109, 124 N.M. 205, 947 P.2d 162, and *State v. Jones,* 114 N.M. 147, 835 P.2d 863 (Ct.App. 1992), the passenger's possession of drugs

was an insufficient basis for Officer Owen to ask Defendant about drugs and request consent to search for drugs. In *Eli L.,* we held that a child's identification as a gang member was not sufficient to demonstrate individualized suspicion of criminal activity to support a search of the child when the police had only generalized suspicion that other gang members had engaged in criminal activity or wrongdoing. *See Eli L.,* 124 N.M. 205, 947 P.2d 162, 1997–NMCA–109, ¶ 11. The child had whistled in a manner the officer felt was a gang whistle and dressed similarly to gang members. *See id.* ¶ 9.

{13} Similarly, in *Jones,* officers stopped and frisked the defendant based on his apparel and his presence with a known gang member and narcotics distributor in an area known for gang activity. *See Jones,* 114 N.M. at 149, 835 P.2d at 865. This Court concluded that the officers' generalized suspicion that the known gang member had committed crimes without specifically connecting the defendant to any particular crime was insufficient to constitute reasonable suspicion to stop the defendant. *See id.* at 151, 835 P.2d at 867.

{14} In contrast, in this case, Officer Seifert had found what he believed to be drugs in the passenger's possession; he had articulable and more than generalized suspicion about criminal activity. In addition, Officer Owen had a separate and particular suspicion about Defendant. Although Officer Owen originally expressed his suspicions as relating to alcohol use, he detailed in his testimony the facts within his knowledge of Defendant's impairment, including Officer Seifert's statement to him that Officer Seifert could not get Defendant to perform the HGN test. These facts, together with the passenger's drug possession, amounted to a reasonable suspicion that Defendant had drugs. *See State v. Lyon,* 103 N.M. 305, 307, 706 P.2d 516, 518 (Ct.App.1985) (" 'Reasonable suspicion' is judged by an objective standard.").

{15} Lastly, we do not consider this case to be controlled by *Flores.* In *Flores,* after officers acting on an anonymous tip were unable to find drugs in the defendant's truck during their roadside search, they moved the defendant and his truck to a city warehouse

where they detained the defendant while they searched the truck and another vehicle for two to three hours. *See Flores*, 1996–NMCA–059, ¶¶ 9–12. We held that the officers did not have reasonable suspicion to further detain the defendant after the roadside drug search did not produce probable cause for arrest. *See id.* ¶ 15. We stated that "[t]he reasonableness of the investigatory stop ended after the first search revealed nothing unusual." *Id.* at ¶ 13.

{16} In this case, to the contrary, the HGN test results did not satisfy Officer Owen's suspicions; not all indicators negated impairment. When Officer Owen completed the HGN test, Officer Owen considered whether and how he could continue his investigation based on the information he had obtained. Diligence in conducting an investigation allows a reasonable opportunity to analyze and integrate information received and to consider additional action that may be taken. Officer Owen was engaged in that thought process immediately after completing the HGN test at the time Officer Seifert told him about the passenger. He did not unreasonably delay the investigation or change the nature of Defendant's detention.

*Consent*

{17} Defendant additionally argues that his consent to Officer Owen's search was invalidated by an improper detention without probable cause and improper questioning about drugs. Because we find that Defendant was legally detained and that Officer Owen's questioning was a legitimate extension of a lawful investigation, Defendant's consent cannot be invalidated on this basis.

*Conclusion*

{18} For the above stated reasons, we affirm the district court's judgment and sentence.

{19} **IT IS SO ORDERED.**

ARMIJO and SUTIN, JJ., concur.