2004-NMCA-054

90 P.3d 539

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Kimberle LOWE, Defendant–Appellee.**

No. 22,523.

Court of Appeals of New Mexico.

March 15, 2004.

Certiorari Granted, No. 28,584, May 3, 2004.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellant.

John B. Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} The State appeals an order suppressing evidence of Defendant Kimberle Lowe's possession of drugs discovered after a search. During a traffic stop for an outdated registration tag, Defendant voluntarily offered to allow the officer to search her vehicle. This volunteered offer immediately followed the officer's question at the outset of the stop as to whether Defendant had any drugs or weapons. The district court concluded the officer had reasonable suspicion to ask about drugs, but did not have reasonable suspicion to ask about weapons. The court held that the inclusion of the word "weapons" in the question tainted the volunteered consent and a subsequent search of a bag containing drugs. We reverse.

## BACKGROUND

{2} Officer Rodriguez (the officer) stopped Defendant in 1998 after noticing a 1996 registration tag on the vehicle. The officer did not observe impaired or illegal driving. The stop was around midnight on Menaul Boulevard in Albuquerque, New Mexico. Defendant came to a safe and diligent stop. Upon approaching Defendant on the driver's side of the vehicle, the officer requested Defendant's license, registration, and insurance. The officer observed that Defendant was "really nervous," was sweating, had some "nervous twitches" or "slight[ ] tweaking," had bloodshot and watery eyes, and slurred speech. Based on the officer's experience, he believed Defendant's behavior was consistent with drug use. The area of the stop was near an area of prostitution and drug activity, although the officer did not necessarily

suspect Defendant was involved in prostitution.

{3} Defendant's level of nervousness was making the officer suspicious. He asked Defendant if she had any drugs or weapons in the vehicle. Defendant responded, "No, but you can search the car." The officer had Defendant get out of the vehicle and, as she did, the officer noticed that she slid a small black bag under the driver's seat. The officer had Defendant stand on a sidewalk nearby so he could observe her from a safe distance as he searched the car. The officer did not conduct a patdown, and he testified that Defendant was cooperative and did not make any overt threats toward him. He retrieved the bag. With regard to the bag, the prosecutor asked the officer during the suppression hearing if the bag was big enough to contain a handgun or any other weapon and the officer responded that it "[p]robably would have to be a pretty small caliber weapon." He did not think the bag to be "anything enormous," just a "regular-sized makeup bag." A backup officer arrived at the scene, but it is unclear when.

{4} The officer asked Defendant if the bag was hers and she responded that it was. He asked Defendant, "Do you have any drugs or weapons in there?" She said "No." He asked Defendant, "Do you mind if I look inside the bag," to which Defendant answered "No." The officer found plastic bags with powdered substances later confirmed to be cocaine and methamphetamine, and Defendant was arrested. The officer testified that if he had not received Defendant's consent to search the bag, he would not have done so.

{5} Defendant did not testify at the suppression hearing regarding any aspect of the stop or the search. In its comments at the conclusion of the hearing, the district court stated that the stop was valid and that the officer had reasonable suspicion to inquire about drugs in the vehicle. However, although determining that the officer was "acting in utmost good faith," the court determined that Defendant's volunteered offer to allow a search of the vehicle was "not validly given" because the officer exceeded what he was authorized to ask Defendant when he asked if she had any weapons in the vehicle.

The court determined that the officer did not have a "reasonable suspicion about weapons or that he was in danger of weapons," and the lack of reasonable suspicion tainted the question "do you have any drugs or weapons in the car" and thereby tainted Defendant's volunteered response. The court felt that Defendant "probably would not have authorized the search of the vehicle if the word 'weapons' . . . had not been in the question." The court concluded the word "weapons" in the question tainted Defendant's consent and that it would have upheld the consent and the search "[i]f the word 'weapons' had not been in the question."

{6} The court's suppression order set out the following findings:

1. The initial stop was valid[.]

2. The officer could properly ask about drugs but had no reasonable suspicion about weapons or guns.

3. The officer's question about guns was not proper.

4. The officer could properly ask [Defendant] to exit the car.

5. Her consent to allow a search of the bag was not voluntarily given because of the addition of the word guns in the question tainted the question and the response.

{7} The State appeals the court's suppression order on the ground the officer had the right to search the vehicle and arrest Defendant for possession of drugs. The State's two points on appeal are: (1) the officer had reasonable suspicion to ask about weapons in the vehicle and Defendant's volunteered consent to search the vehicle provided the officer lawful grounds on which to conduct the search; and (2) even if the officer did not have the right to ask about weapons, Defendant's voluntary consent to search was not tainted by the addition of the word "weapons." The State does not attack any of the district court's findings of fact. No material facts are in dispute.

## DISCUSSION

### Standard of Review

■ {8} In regard to a motion to suppress evidence, this Court analyzes the legality of an initial stop, the scope of inquiry during detention, and any ensuing search or seizure,

as mixed questions of law and fact, using a substantial evidence standard to review the facts and a de novo review of the district court's application of the law to those facts. *State v. Vandenberg*, 2003–NMSC–030, ¶ 17, 134 N.M. 566, 81 P.3d 19; *State v. Reynolds*, 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995); *State v. Werner*, 117 N.M. 315, 316–17, 871 P.2d 971, 972–73 (1994); *State v. Attaway*, 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994); *City of Albuquerque v. Haywood*, 1998–NMCA–029, ¶ 10, 124 N.M. 661, 954 P.2d 93.

 {9} We give deference to the facts as found by the district court that are supported by substantial evidence. *State v. Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856. "[W]e review the facts in a light most favorable to the prevailing party, as long as the facts are supported by substantial evidence." *Vandenberg*, 2003–NMSC–030, ¶ 18, 134 N.M. 566, 81 P.3d 19.

 {10} Within the confines of the undisputed facts and the findings of fact supported by substantial evidence, we look at the totality of the circumstances in determining the existence of reasonable suspicion. *State v. Urioste*, 2002–NMSC–023, ¶¶ 6, 10, 132 N.M. 592, 52 P.3d 964; *see also United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (reaffirming the totality of the circumstances test for reasonable suspicion). We review the legal determination of reasonable suspicion de novo. *Jason L.*, 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856.

### The Stop

 {11} No issue exists regarding the validity of the stop in this case. "A police officer may stop a vehicle if he has an objectively reasonable suspicion that the motorist has violated a traffic law." *State v. Vandenberg*, 2002–NMCA–066, ¶ 17, 132 N.M. 354, 48 P.3d 92, *rev'd on other grounds*, 2003–NMSC–030, 134 N.M. 566, 81 P.3d 19. In the present case, the district court found that the officer lawfully stopped Defendant for an outdated registration tag. Defendant does not contend otherwise. *See Haywood*, 1998–NMCA–029, ¶¶ 11–12, 124 N.M. 661, 954 P.2d 93 (holding valid a traffic stop to check whether vehicle had a license plate or temporary tag).

### The Scope of Inquiry

 {12} A stop of a motorist based on a traffic violation may lawfully involve a de minimis investigatory detention to permit the officer to inquire into matters reasonably related to the circumstances that initially justified the stop and also to check out license, registration, and insurance. *Reynolds*, 119 N.M. at 388, 890 P.2d at 1320; *State v. Romero*, 2002–NMCA–064, ¶¶ 9–10, 132 N.M. 364, 48 P.3d 102; *Haywood*, 1998–NMCA–029, ¶¶ 13–16, 124 N.M. 661, 954 P.2d 93. The officer can also run a wants and warrants check in regard to the current validity of the documentation. *State v. Taylor*, 1999–NMCA–022, ¶ 14, 126 N.M. 569, 973 P.2d 246. Continued or contemporaneous detention for purposes related to other unlawful activity requires reasonable suspicion, proven through specific articulable facts, that the motorist has been or is engaged in criminal activity. *Romero*, 2002–NMCA–064, ¶ 10, 132 N.M. 364, 48 P.3d 102; *Taylor*, 1999–NMCA–022, ¶ 20, 126 N.M. 569, 973 P.2d 246; *State v. Cobbs*, 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct.App.1985). For example, if the officer has reasonable, articulable suspicion that the motorist possesses or is under the influence of illicit drugs or alcohol, the officer can inquire about drugs or alcohol. *See State v. Williamson*, 2000–NMCA–068, ¶¶ 10, 14, 129 N.M. 387, 9 P.3d 70 (holding it lawful in traffic stop to expand questioning of the defendant to inquire about drug possession when officer had reasonable suspicion that the defendant was under the influence of alcohol and drugs were found on the passenger); *Taylor*, 1999–NMCA–022, ¶ 20, 126 N.M. 569, 973 P.2d 246 (holding officer was not entitled to ask a driver about illegal drugs or alcohol because this inquiry was beyond the scope of investigation when there existed no articulable facts or conduct giving the officer reason to believe the driver was in possession of drugs or alcohol).

 {13} Continued or contemporaneous detention may also be permissible under certain circumstances relating to officer

safety. For example, an officer can require the driver and passengers to exit a vehicle out of a concern about weapons. In *State v. Lovato*, 112 N.M. 517, 522, 817 P.2d 251, 256 (Ct.App.1991), we stated:

Even in routine traffic stops, police may adopt precautionary measures addressed to reasonable fears. In *[Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977),] the Supreme Court recognized the inordinate risks police take when they approach cars with persons seated in them, and approved the practice of requiring the persons to get out of the car and be subject to a protective frisk even in the absence of individualized suspicion.

{14} The present case involves an inquiry about the presence of drugs and weapons at the outset of an ordinary traffic stop encounter. The officer's first question of Defendant after requesting her license, registration, and insurance, was whether she had any drugs or weapons in the vehicle. Defendant answered, "No, but you can search the car." The district court determined that the officer had reasonable suspicion to investigate further about the use or possession of drugs. However, the court also found that the officer did not have a reasonable suspicion about weapons or that he was in danger of weapons and that, therefore, the inquiry about weapons in the vehicle was unlawful. The scope of inquiry issue is whether the officer's question about weapons at the outset of the stop exceeded the scope of permissible questioning of Defendant.

{15} Several New Mexico investigatory and ordinary traffic stop cases have involved officer inquiry about weapons, but none directly address a standard for mere inquiry about weapons. *See Vandenberg*, 2003–NMSC–030, 134 N.M. 566, 81 P.3d 19; *State v. Pierce*, 2003–NMCA–117, 134 N.M. 388, 77 P.3d 292; *State v. Chapman*, 1999–NMCA–106, 127 N.M. 721, 986 P.2d 1122; *Taylor*, 1999–NMCA–022, 126 N.M. 569, 973 P.2d 246; *Haywood*, 1998–NMCA–029, 124 N.M. 661, 954 P.2d 93; *State v. Flores*, 1996–NMCA–059, 122 N.M. 84, 920 P.2d 1038. The parties approach this issue as though the set rule is that an officer may as a precautionary matter inquire of motorists, including passengers, whether they have weapons on their person or in the vehicle only if the officer has a reasonable, articulable suspicion from the totality of the circumstances of which the officer is aware that the officer may be in danger of harm if a weapon is present. The parties assume that this is the present state of the law, as did the district court. We need not and we choose not to resolve this issue in the present case. Even assuming that the rule is as the parties and the court believe it, and that the court was correct in holding that the officer did not have reasonable suspicion to inquire about weapons, the Fourth Amendment-taint issue, as we shall see, is determinative. That issue is whether the inquiry about weapons tainted Defendant's voluntary consent to search and the searches of her vehicle and bag.

### Fourth Amendment–Taint Analysis

{16} As indicated, in addressing this argument, we assume but need not decide that the district court was correct in holding that the officer did not have reasonable suspicion to inquire about weapons. In its argument, the State contends that the district court had "no rational basis upon which to find [D]efendant's unsolicited, voluntary consent to search ... tainted in any way by the inclusion of the word 'weapons' in the question." The State argues that the use of "weapons" in the question "did not expand the scope of the detention, was not unrelated to the rationale for the detention, and did not expand the intrusiveness of the encounter." Further, the State argues, since the court found that the officer had reasonable suspicion about drugs and received voluntary consent to search for drugs, the subsequent seizure of the drugs found during the search was lawful.

{17} Defendant's consent was obviously spontaneous. The district court determined that it was also voluntary. This Court has addressed whether a voluntary consent can purge the taint of unlawful police conduct. The consent is often held to be the fruit of a poisonous tree when the conduct that precedes it is illegal. *See Taylor*, 1999–NMCA–022, ¶ 17, 126 N.M. 569, 973 P.2d 246 (involv-

ing questioning not within the scope of reasonable suspicion followed by consent to search); *State v. Jutte,* 1998–NMCA–150, ¶¶ 21–23, 126 N.M. 244, 968 P.2d 334 (involving unlawful detention resulting in de facto arrest, contaminating consent to search); *State v. Hernandez,* 1997–NMCA–006, ¶¶ 30–36, 122 N.M. 809, 932 P.2d 499 (same); *State v. Bedolla,* 111 N.M. 448, 450, 806 P.2d 588, 590 (Ct.App.1991) (involving invalid stop and detention followed by consent to search); *see also State v. Garcia,* 116 N.M. 87, 91, 860 P.2d 217, 221 (Ct.App.1993) (involving threat of unlawful detention tainting consensual disclosure of evidence); *State v. Devigne,* 96 N.M. 561, 564, 632 P.2d 1199, 1202 (Ct.App. 1981) (involving a claim of unlawful arrest tainting confession).

{18} We conduct a "Fourth Amendment taint analysis," *Taylor,* 1999–NMCA–022, ¶ 27, 126 N.M. 569, 973 P.2d 246, to determine whether to employ the exclusionary rule. *Hernandez,* 1997–NMCA–006, ¶¶ 30–36, 122 N.M. 809, 932 P.2d 499; *Bedolla,* 111 N.M. at 450, 456, 806 P.2d at 590, 596; *see also State v. Gilbert,* 98 N.M. 530, 531–32, 650 P.2d 814, 816–17 (1982) (involving illegal detention and resultant confession). This constitutional analysis stems from the United States Supreme Court cases of *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), which, in turn, stem from *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{19} "[C]onsent removes the taint of an illegal detention only if there was sufficient attenuation between the detention and the consent to search." *Hernandez,* 1997–NMCA–006, ¶ 31, 122 N.M. 809, 932 P.2d 499. We examine temporal proximity, intervening circumstances, and, particularly, "the purpose and flagrancy of the official misconduct." *Id.* (internal quotation marks and citation omitted). Involved in this inquiry is whether the "evidence was obtained as a result of the exploitation of [the misconduct]." *Id.* ¶ 36; *see also Taylor,* 1999–NMCA–022, ¶ 27, 126 N.M. 569, 973 P.2d 246 (stating that to admit evidence obtained in a consensual search "the consent must be both

voluntary and purged of all taint under a Fourth Amendment challenge"); *Jutte,* 1998–NMCA–150, ¶ 21, 126 N.M. 244, 968 P.2d 334 (distinguishing, with respect to search, between a "Fifth Amendment voluntariness analysis" and a "Fourth Amendment fruit of the poisonous tree analysis" stating "evidence obtained by the purported consent should be held admissible only if it is determined that the consent was *both* voluntary and not an exploitation of the prior illegality" (internal quotation marks and citation omitted)).

{20} We are hard pressed to hold Defendant's consent to have been tainted. The officer included "weapons" in his one sentence question that combined "weapons" with "drugs." The district court held the inquiry about drugs to be lawful and Defendant has not attacked that holding on appeal. There exists no hint of wrongful motive or purpose, flagrant misconduct, or exploitation of any illegality by the officer in this case. The court in fact determined that the officer acted "in [the] utmost good faith." The officer did not seek consent—Defendant immediately offered to allow the officer to search her vehicle. The district court merely speculated that Defendant would not have offered to allow a search if the word "weapons" had not been included in the question.

{21} Thus, although virtually only a second or two may have elapsed between the question and Defendant's response, no evidence supports a direct causal relationship between the use of the word "weapons" and the volunteered response to search that provides any basis to find official exploitive, flagrant, or purposeful misconduct of a nature that would taint the consent. We hold the district court erred by not evaluating the lack of such improper misconduct in light of Defendant's volunteered response to search and by concluding that the officer's inquiry about weapons tainted Defendant's response solely because the officer lacked reasonable suspicion.

{22} By holding the consent untainted in this case, we by no means intend to open any door to simultaneous inquiry about both criminal activity and weapons when an officer does not have reasonable suspicion to inquire

about criminal activity or weapons. Nor will police officers otherwise be permitted to inquire about weapons as a ploy leading to other bad faith action to uncover criminal activity based on speculation or bare suspicion. We make it very clear that an abuse of these precautionary measures to protect against harm from weapons should not be tolerated by district courts and will not be tolerated by this Court when those measures smack of pretext or ruse.

### Other Issues

{23} The district court made findings on other issues in need of review if we were to reverse its determination of the validity of the officer's inquiry. The court found that the officer reasonably required Defendant to exit the vehicle while he searched the vehicle; that the search for the bag underneath the seat was reasonable; that the questions regarding the bag were not significant, in that the officer's search of the bag was reasonable and proper even if he had not asked the questions regarding the bag; that the officer could properly rely on Defendant's consent to search the vehicle to search the bag; and that the search of the bag was legal if the initial consent were validly given.

{24} Defendant contends that even if the first question about weapons did not taint the remainder of the encounter, the second question about weapons inside the bag was unreasonable and did taint Defendant's consent to search the bag. Defendant asks us to affirm the district court's suppression of evidence because the suppression was appropriate even if for the wrong reason. *See State v. Beachum*, 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App.1972) (stating this Court will af-

firm if the district court is right for any reason, as long as the opposing party had an opportunity to respond). The rationale Defendant argues is that the officer had no safety concern at the point he asked about weapons in regard to the bag.

{25} We are unwilling to affirm the suppression of evidence on this ground. Defendant does not specifically attack the court's findings on this issue. Nor does she present any persuasive argument or authority to overcome the court's determinations that the inquiry about and search of the bag was lawful. *See Vandenberg*, 2003–NMSC–030, ¶ 18, 134 N.M. 566, 81 P.3d 19 (viewing factual findings by the district court, supported by substantial evidence, in a light most favorable to the prevailing party). Because we uphold the first consent, we agree with the district court's determination that if the first consent was valid, nothing the officer said regarding weapons would "undo the prior volunteered consent to search."

### CONCLUSION

{26} We reverse the district court's order granting the motion to suppress evidence.

{27} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and IRA ROBINSON, Judges.