2004-NMCA-127

101 P.3d 332

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Kenneth Ray PRINCE, Defendant–Appellant.**

**No. 23,657.**

Court of Appeals of New Mexico.

Sept. 7, 2004.

Certiorari Granted, No. 28,908, Nov. 9, 2004.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Jennifer R. Byrns, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

BUSTAMANTE, Judge.

{1} While Defendant was detained for a speeding violation, narcotics agents arrived to conduct an unrelated drug investigation which led to his arrest for various drug charges. He entered a conditional guilty plea to the charges pending the outcome of this appeal from the district court's decision to deny his motion to suppress. Defendant argues that the State violated his constitutional right to be free from unreasonable searches and seizures on four grounds: (1) illegal investigatory detention, (2) unlawful *Terry* frisk, (3) pretext, and (4) consensual search was involuntary and tainted by the unlawful seizure. Defendant further asserts that in a motion to suppress, the State must show the officer's radar equipment was scientifically reliable. We hold that the investigatory detention for drugs was unlawful and that it tainted any evidence discovered thereafter. We reverse Defendant's conviction and remand to vacate the judgment and sentence.

**FACTS AND PROCEEDINGS**

{2} At the suppression hearing, Agent Randy Pitts testified that the Pecos Valley Drug Task Force (PVDTF), where he was

assigned, and the Midland police department in Texas, had been investigating Defendant for possible drug involvement for several months. Defendant drew the PVDTF's attention after the Midland police contacted Pitts for information on Defendant whom they believed might be involved with persons who were allegedly manufacturing and trafficking methamphetamine in Midland. On the night of this incident, Pitts received information that Defendant might be traveling from Midland, Texas, to Artesia, New Mexico, as well as a vehicle description. Based on this and other information he obtained from his investigation, Pitts thought Defendant might be in possession of a controlled substance. Since he did not believe that he had enough information to justify a stop, however, he had an agent contact the Artesia police department to see if patrol deputies could develop probable cause to stop Defendant.

{3} Deputy Rudy Arrey of the Eddy County Sheriff's Department testified that on that same evening, he was called in from patrol by a PVDTF agent who told him to be on the look out (BOLO) for a tan pickup truck with Arizona plates heading west on Highway 82 that "may or may not have some drugs in it." He understood this to mean that he should stop the vehicle if he felt there was probable cause to do so. Arrey, who was "running radar" that evening, clocked Defendant's truck doing 72 mph in a 65 mph zone. He called in the stop, approached the driver, whom he later identified as Defendant, and requested his driver's license, registration, and proof of insurance. Within minutes, Agent Pitts and several other agents, waiting nearby arrived and took over the investigation.

{4} While Arrey ran a warrants check, Pitts approached Defendant, told him to step out of the truck, identified himself as a narcotics agent, told him he had been under investigation, and asked to speak with him. Pitts testified that Defendant was "very cordial and cooperative," but, as a routine safety precaution, he told Defendant that he intended to pat him down for any weapons. Defendant then told Pitts that he had some pocketknives. After removing five knives from Defendant, an object was located in Defendant's overall bib, and although it did not feel like a knife according to Pitts, Defendant consented to its removal. The object was a three to four inch vial containing a residue.

{5} After being advised of his *Miranda* rights, Defendant admitted that the residue was methamphetamine and that there was more in his truck. Defendant signed a written consent to search the truck, wherein officers located a "user quantity" of marijuana, methamphetamine, and a syringe. Deputy Arrey issued a speeding citation to Defendant several hours after his arrest for the drugs.

{6} A Criminal Information was filed charging Defendant with possession of methamphetamine, marijuana, and drug paraphernalia. After his motion to suppress was denied, he entered a conditional plea of no contest to all of the charges and a judgment and sentence was entered. This appeal from the motion to suppress followed.

## No Reasonable Suspicion Articulated to Expand the Scope of the Traffic Stop

{7} Defendant argues that Agent Pitts' suspicions were based on a hunch rather than on specific, incriminating facts to create reasonable suspicion. As such, he contends that the fruits of the unlawful stop must be suppressed. The State urges that reasonable suspicion was established through the earlier investigation and that the "tip" from the Midland police regarding Defendant's travel plans, including a vehicle description, license plate number, an approximate time, and general direction of travel was verified. Alternatively, they argue that additional, independent reasonable suspicion was not required because Defendant was already lawfully detained and the drug investigation was part of a continuing lawful stop.

{8} The district court's decision regarding a motion to suppress involves mixed questions of fact and law. *State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. We review the facts in a light most favorable to the prevailing party and defer to the district court's findings of fact that are supported by substantial evidence. *Id.* Legal

issues such as whether there was reasonable suspicion to support an investigatory detention are reviewed de novo. *Id.*

{9} In the context of a Fourth Amendment analysis, an officer may stop a vehicle when he or she has reasonable suspicion that a traffic law has been violated. *State v. Lowe,* 2004–NMCA–054, ¶ 11, 135 N.M. 520, 90 P.3d 539, *cert. granted,* 2004–NMCERT–005, 135 N.M. 565, 92 P.3d 11. The scope of the investigatory detention must be "reasonably related to the circumstances that . . . justified the stop." *Id.* ¶ 12; *State v. Romero,* 2002–NMCA–064, ¶ 10, 132 N.M. 364, 48 P.3d 102; *State v. Williamson,* 2000–NMCA–068, ¶ 8, 129 N.M. 387, 9 P.3d 70; *City of Albuquerque v. Haywood,* 1998–NMCA–029, ¶ 15, 124 N.M. 661, 954 P.2d 93. During a traffic stop, the officer may conduct a de minimis investigatory detention to inquire about license, registration, and insurance, and to run a wants and warrants check. *Lowe,* 2004–NMCA–054, ¶ 12, 135 N.M. 520, 90 P.3d 539; *State v. Taylor,* 1999–NMCA–022, ¶ 14, 126 N.M. 569, 973 P.2d 246. Contemporaneous or continued investigation beyond the scope of the initial traffic stop is justified only if the officer can articulate specific and particularized factors that give rise to an objectively reasonable suspicion that other criminal activity has been or may be afoot. *Lowe,* 2004–NMCA–054, ¶ 12, 135 N.M. 520, 90 P.3d 539; *State v. Duran,* 2003–NMCA–112, ¶ 19, 134 N.M. 367, 76 P.3d 1124, *cert. granted,* Sup.Ct. No. 28,241, 134 N.M. 320, 76 P.3d 638; *Romero,* 2002–NMCA–064, ¶ 10, 132 N.M. 364, 48 P.3d 102. Generalized suspicions or unparticularized hunches that a person has been or is engaged in criminal activity do not suffice to justify a detention. *Taylor,* 1999–NMCA–022, ¶ 20, 126 N.M. 569, 973 P.2d 246.

{10} Reasonable suspicion is measured by the totality of the circumstances. *Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. We first ascertain "what facts were available to [the officer] and what inferences logically flowed from those facts." *State v. Cobbs,* 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct.App.1985). Next, we determine whether these facts "warrant a person of reasonable caution in believing that criminal activity was possibly afoot." *Id.* at 627, 711 P.2d at 904.

{11} In this case, the reasonable suspicion that gave rise to the initial stop was a traffic violation. Although Deputy Arrey was aware of the BOLO, he testified that he stopped Defendant for driving 72 mph in a 65 mph zone. Other than speeding, Arrey discerned no evidence that Defendant was violating any other law. While he was running the warrants check, Pitts arrived on the scene for the express purpose of questioning Defendant about drugs. Since Defendant was not free to leave at this time, this encounter was not consensual. *See Taylor,* 1999–NMCA–022, ¶ 25, 126 N.M. 569, 973 P.2d 246 (stating that the defendant could not walk away from questioning unrelated to the rationale for the stop); *see also State v. Reynolds,* 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995) (requesting driver's license, registration, and insurance is a seizure). Therefore, in order to expand the scope of the initial traffic stop, Pitts had to articulate specific and particularized facts that led him to reasonably believe Defendant had drugs in his possession.[1]

{12} What Pitts knew at the time of the encounter was that the Midland police department suspected Defendant *might* be involved with people in Midland who *might* be manufacturing and trafficking methamphetamine. Pitts failed to articulate any additional facts from his three-month investigation of Defendant that would create reasonable suspicion for the stop. The only other information he knew was that Defendant was en route from Midland to Artesia in a Ford pickup super cab, the license plate number (from his prior investigation), and that he "might" have methamphetamine. Yet when questioned about the type

---

1. Although a BOLO with sufficient corroboration *might* be sufficient to create reasonable suspicion for a stop, *State v. Vandenberg,* 2003–NMSC–030, ¶ 38, 134 N.M. 566, 81 P.3d 19; *State v. De Jesus–Santibanez,* 119 N.M. 578, 581, 893 P.2d 474, 477 (Ct.App.1995), in this case, the BOLO contained essentially the same information as Agent Pitts testified to at the suppression hearing. We, therefore, review the actual testimony for a complete analysis of this issue.

of drug or amount in Defendant's possession, he testified that he was not given any specific information. According to Pitts, he based his suspicions on (1) the tip about Defendant's travel plans, and (2) "some other information that I had received during the course of our prior investigations of him." Whatever that information was, he did not believe it gave him reasonable suspicion to stop Defendant: "basically, the information was ... he may be coming through this way[;][i]f you are able to develop your own probable cause for anything else to stop him, then that's what it hinges on."

{13} We hold that the drug investigation was unreasonable under these facts. Pitts never identified the source of this "tip," and even if we assume it came from another law enforcement agency, we are still unable to ascertain where or how the tip originated. What we are left with is an anonymous tip that must be corroborated by police to establish its reliability, and create reasonable suspicion to expand the scope of the traffic stop to question Defendant about drugs. *See Urioste,* 2002–NMSC–023, ¶¶ 7–8, 132 N.M. 592, 52 P.3d 964; *State v. Eskridge,* 1997–NMCA–106, ¶ 20, 124 N.M. 227, 947 P.2d 502; *State v. Flores,* 1996–NMCA–059, ¶ 8, 122 N.M. 84, 920 P.2d 1038; *State v. Bedolla,* 111 N.M. 448, 450–51, 806 P.2d 588, 590–91 (Ct.App.1991). "[A]nonymous tips are generally less reliable than tips from known informants and can form the basis for reasonable suspicion only if accompanied by specific indicia of reliability." *Urioste,* 2002–NMSC–023, ¶ 12, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted). In this regard, an anonymous tip requires more information than those provided by known informants, such as witnesses or victims of a crime. *Id.* ¶¶ 12, 17; *see Taylor,* 1999–NMCA–022, ¶ 8, 126 N.M. 569, 973 P.2d 246 (presuming crime victim or witness tips are reliable).

{14} We observe that a reliable tip often has two components: "the crucial part of the informant's story[ ] i.e., allegations that criminal activity has occurred and that evidence pertaining thereto will be found in the location to be searched"; and "by specific indicia of reliability, for example the correct forecast of a subject's not easily predicted movements." *Urioste,* 2002–NMSC–023, ¶¶ 9, 12, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citations omitted); *see Flores,* 1996–NMCA–059, ¶ 9, 122 N.M. 84, 920 P.2d 1038; *State v. De Jesus–Santibanez,* 119 N.M. 578, 580, 893 P.2d 474, 476 (Ct.App.1995) (indicating the defendant must challenge "both the veracity of the informant and the trustworthiness of his information"). In *Urioste,* for example, the Tucumcari police relayed a tip from an anonymous source to the Quay County sheriff's department: a Hispanic male with a long dark pony tail, driving a green, older model Ford Econoline van was transporting cocaine from Albuquerque to Tucumcari, arriving at 10:30 p.m. and his home address. 2002–NMSC–023, ¶ 2, 132 N.M. 592, 52 P.3d 964. Police verified that the van was not parked at the defendant's home, and then spotted a van and driver matching the description traveling on the predicted route at 10:14 p.m. *Id.* ¶ 3. The Court held that corroboration of "a range of details relating ... to future actions of third parties ordinarily not easily predicted" was sufficient to create reasonable suspicion. *Id.* ¶¶ 16–17 (alteration in original) (internal quotation marks and citation omitted).

{15} Similarly, in *Flores,* the Van Horn, Texas sheriff's office passed a tip to the Artesia police department that three described vehicles left Van Horn for Artesia about an hour or so earlier carrying 200 to 250 pounds of marijuana, possibly in the tires of one of the vehicles. 1996–NMCA–059, ¶ 2, 122 N.M. 84, 920 P.2d 1038. Officers spotted two of the vehicles headed north on the most direct route from Van Horn and stopped them after they saw them turn off in Artesia. Ten minutes later, the third vehicle arrived and was also detained. *Id.* ¶ 3 We held that "[d]etails in the tip were sufficiently self-corroborating to establish the overall reliability of the tip even though that information did not, taken alone, necessarily indicate criminal conduct." *Id.* ¶ 10.

{16} In *De Jesus–Santibanez,* a customs agent in Texas passed a tip to the New Mexico state police that the defendant and a man were leaving El Paso, Texas at 9:45 p.m.

and driving a load of marijuana and cocaine to Colorado and gave a detailed description of the truck. 119 N.M. at 579, 893 P.2d at 475. An Otero County deputy saw a truck matching the description driving northbound at the anticipated time, the driver pulled into a convenience store parking lot, and went into the store. *Id.* Upon returning to the vehicle, the deputy had a conversation with the driver about speeding and the suspicion of transporting illegal drugs. *Id.* Without request, the driver volunteered to let the deputy search the vehicle. *Id.* After a cursory look at the vehicle, the deputy returned to his patrol car. *Id.* Before leaving, the deputy thought to ask for the passenger's name. *Id.* Upon learning that the passenger's name matched the BOLO, the vehicle was searched, locating a large amount of marijuana. *Id.* at 579–80, 893 P.2d at 475–76. We held that corroboration of the vehicle description, license plate, time and direction of travel, and route was reasonable suspicion for both of the deputy's stops. *Id.* at 581–82, 893 P.2d at 477–78.

{17} In this case, the police also corroborated the tip to the extent that Defendant was driving the described vehicle, at the approximate time, in the right direction, and on the predicted route. Significantly, unlike the other cases, what is missing from this mix are crucial details and particularized information regarding the alleged criminal activity that was occurring. All Agent Pitts knew, or at least all that he articulated, was that Defendant was associating with possible drug dealers in Midland, Texas and for some unknown reason he might have drugs in his possession. His investigation yielded no new information beyond a license plate number. Guilt by association and generalized suspicions are insufficient grounds upon which to base an investigatory detention. In the absence of specific and particularized incriminating information about the criminal activity that defendant is or is about to engage in, generalized suspicions and mere corroboration of innocent activity, even if it is not readily available to the general public, is insufficient to create reasonable suspicion for an investigatory detention.

{18} To the extent the State relies on *Taylor* to support its argument that Agent Pitts did not need independent, additional reasonable suspicion for a "continuing investigation" once he was lawfully detained, we disagree. *Taylor* is distinguishable on several levels. First, the informant was both a witness and a victim of the alleged crimes who was presumed reliable unlike the anonymous source in this case. 1999–NMCA–022, ¶ 8, 126 N.M. 569, 973 P.2d 246. Second, the tip created reasonable suspicion to detain defendant to investigate two crimes: littering that the informant witnessed and a theft that occurred at the informant's home six months earlier involving a vehicle that resembled the defendant's car. The informant also directed the officers to a location where he pointed out the defendant's car. *Id.*

{19} Although the officers in this case freely admitted that there were two reasons for stopping Defendant, the critical distinction from *Taylor* is that they did not have reasonable suspicion to detain him for the drug investigation. Even though Defendant was lawfully detained at the time, this was an independent investigation that required additional reasonable suspicion to be lawful. Officers may not use a lawful stop to fish for evidence of other crimes where there is insufficient reason to detain a defendant beyond the purpose of the initial detention. *See id.* ¶¶ 20, 22–23.

**Consent and Evidence Seized was Fruit of Unlawful Stop**

{20} Having determined that the stop was unlawful, we next consider whether the exclusionary rule should be employed to suppress the evidence obtained as a result of the consensual search of Defendant and his car. For evidence to be admissible, consent must be both voluntary and purged of all taint from a prior illegality. *Taylor,* 1999–NMCA–022, ¶ 27, 126 N.M. 569, 973 P.2d 246; *State v. Jutte,* 1998–NMCA–150, ¶ 21, 126 N.M. 244, 968 P.2d 334. The facts of this case give rise to a Fourth Amendment taint analysis to determine whether the consent was an exploitation of the illegal detention. *See Taylor,* 1999–NMCA–022, ¶ 27, 126 N.M. 569, 973 P.2d 246. "[C]onsent removes the

taint of an illegal detention only if there was sufficient attenuation between the detention and the consent to search." *Lowe,* 2004–NMCA–054, ¶ 19, 135 N.M. 520, 90 P.3d 539 (internal quotation marks and citation omitted). In other words, "there must be a break in the causal chain from the [illegality] to the search[.]" *Taylor,* 1999–NMCA–022, ¶ 28, 126 N.M. 569, 973 P.2d 246 (alterations in original) (internal quotation marks and citation omitted). To this end, we consider the "temporal proximity, [of the arrest and the consent, the presence of] intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct ... [including] whether the evidence was obtained as a result of the exploitation." *Lowe,* 2004–NMCA–054, ¶ 19, 135 N.M. 520, 90 P.3d 539 (internal quotation marks and citations omitted); *Taylor,* 1999–NMCA–022, ¶ 28, 126 N.M. 569, 973 P.2d 246; *Jutte,* 1998–NMCA–150, ¶ 22, 126 N.M. 244, 968 P.2d 334.

{21} In this case, there is a direct causal relationship between the illegal detention and the consent which is underscored by flagrant misconduct. The PVDTF agent used a lawful traffic stop to perform an unrelated drug investigation when he himself knew there was no reasonable suspicion to detain Defendant for such purpose. There was no break in the causal chain, either in terms of temporal proximity or intervening circumstances. Agents arrived within minutes of the stop, removed Defendant from his vehicle, subjected him to a search for weapons, even though he was completely cooperative. They located an object that did not appear to be a weapon, but which they removed anyway after obtaining Defendant's consent. Immediately thereafter, Defendant admitted what it was and where officers could find more in his truck. His consent to search both his person and his truck flowed directly from, and was an exploitation of, the unlawful investigatory detention.

## CONCLUSION

{22} Having determined that the investigatory detention for drugs was unlawful, we do not reach the other issues raised in this appeal. We reverse Defendant's conviction and remand to the district court to vacate the judgment and sentence.

{23} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and MICHAEL E. VIGIL, Judges.