2006-NMCA-067

136 P.3d 1022

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Gregario RUBIO, Defendant–Appellee.**

**No. 25,310.**

Court of Appeals of New Mexico.

March 13, 2006.

Certiorari Denied, No. 29,746, June 9, 2006.

Corrected June 19, 2006.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM for Appellant.

Freedman, Boyd, Daniels, Hollander & Goldberg, P.A., Zachary A. Ives, Albuquerque, NM for Appellee.

## OPINION

SUTIN, Judge.

{1} We have withdrawn our opinion filed on February 1, 2006, and we substitute the present opinion in its stead.

{2} In this routine traffic stop case, we address the constitutionality of (1) an officer asking for and obtaining identification from the owner of the vehicle who was a passenger, and (2) the officer running a computer check using the identification obtained. The driver, unable to produce evidence of registration and insurance, indicated that one of his passengers was the owner of the vehicle. The police officer requested the owner-passenger's identification and then ran a "persons" computer check on the owner-passenger. After learning of an outstand-

ing misdemeanor warrant on the owner-passenger and arresting him, the officer searched the vehicle and seized unlawful drugs. The district court suppressed the evidence obtained from the search as the fruit of an unlawful seizure and search. The State contends that the request for identification and computer check were lawful and therefore the search was lawful. We agree. We hold that the officer's request for identification from the owner-passenger and the subsequent computer check based on that identification were lawful; thus, the evidence from the search after the owner-passenger's arrest was not the fruit of an unlawful seizure or search.

**BACKGROUND**

{3} Officer Dudewicz observed two vehicles traveling alongside each other moving at a speed of approximately ten miles per hour in a thirty-five mile per hour zone and obstructing two lanes of traffic. Defendant Gregario Rubio, who was a front-seat passenger in the vehicle traveling in the left lane, was engaged in conversation with the driver of the vehicle in the right lane. Noticing that the driver of the vehicle in the left lane was not wearing a seatbelt, the officer engaged her emergency equipment and pulled the vehicle over.

{4} The officer asked the driver for his driver's license, registration, and insurance. The driver had a difficult time presenting the paperwork, and when the officer asked if he had insurance for the vehicle, the driver "looked rather confused." The officer then asked the driver who owned the vehicle. The driver pointed to Defendant, who stated that "he owned the vehicle or that it was registered to him." The officer then asked Defendant for his identification. The officer noticed that the passenger in the back seat also was not wearing a seatbelt and asked for his identification too. The officer then "ran a persons check on all three of them." The check on Defendant showed that he was the subject of an outstanding misdemeanor warrant, for which the officer arrested Defendant. The officer made arrangements to tow the vehicle and did an inventory search. The officer's search of Defendant's vehicle produced marijuana and crack cocaine.

{5} At the suppression hearing, the district court asked Officer Dudewicz to explain why she asked for Defendant's identification. The officer stated that the driver indicated that Defendant was the registered owner of the vehicle and the driver did not have the paperwork for the vehicle. The court asked the officer why she ran a warrants check on Defendant's identification and she responded that it was standard that she would usually run a warrants check on any person that she came across. The State asked the officer, "If a driver gives you information and indicates the owner is in the car, do you ask for that—do you investigate that other person, typically?" The officer responded, "To insure that that [person], in fact, is the registered owner, yes."

{6} The district court determined that the initial encounter between the officer and Defendant was consensual and that the officer had a legitimate basis for confirming the ownership of the vehicle. However, the court also determined that the officer needed Defendant's further consent to conduct a warrants check. The court held that there were less intrusive ways to confirm Defendant's ownership. In deciding to suppress the evidence, the court stated from the bench:

> I'm going to grant the motion to suppress the evidence based on the following rationale: The Court finds that, in fact, this was a consensual encounter by the police officer with the defendant and that the officer testified that she had in so many words a legitimate reason for asking the information from the defendant, and that was for the purposes of confirming that he was, in fact, the owner of the vehicle. However, the Court finds that there [were] less intrusive ways to confirm that the defendant, given the information on his ID, was the actual owner of the vehicle by simply checking the ID with the information on the vehicle registration. The officer did not—in order to have continued with her consensual encounter, the Court finds that she should have asked the defendant if, in fact, she could conduct a warrants check, which she did not do.

By continuing with the warrants check, the Court finds that this encounter went from a consensual encounter to a seizure and the police officer did not in any way articulate any facts indicating a reasonable suspicion that the defendant had been or was involved in criminal activity or that her additional seizure and investigation was warranted for safety concerns.

{7} On appeal, the State argues that Defendant was not seized and consented to the officer's actions. The State also argues that even if obtaining Defendant's identification constituted a detention, the officer was justified in running a computer check to determine whether the driver was entitled to drive the vehicle and to confirm that the vehicle was properly registered and insured.

{8} We first discuss the relevant New Mexico law on routine traffic stops. We then discuss whether, under the circumstances in this case, the officer could lawfully obtain Defendant's identification and proceed to do a computer "persons" or warrants check on Defendant. We conclude that because the officer had a legitimate reason to determine whether Defendant was a registered owner of the vehicle and properly insured the vehicle, the warrants check was also a de minimis continuing detention of Defendant.

## DISCUSSION

### Standard of Review

■ {9} Review of a motion to suppress evidence involves mixed questions of law and fact, and this Court applies a substantial evidence standard to a review of the facts and reviews de novo the district court's application of the law to those facts. *State v. Reynolds,* 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995); *State v. Lowe,* 2004–NMCA–054, ¶ 8, 135 N.M. 520, 90 P.3d 539. Because the facts are undisputed, our review is solely de novo.

### Relevant Traffic Stop Law

{10} The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. The New Mexico Constitution states: "The peo-

ple shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures[.]" N.M. Const. art. II, § 10.

■ {11} A traffic stop constitutes a seizure of the vehicle and its occupants. *State v. Duran,* 2005–NMSC–034, ¶ 22, 138 N.M. 414, 120 P.3d 836. In this regard, we disagree with the State's contention that the interaction with Defendant, even after the officer asked for identification, was consensual. *See State v. Affsprung,* 2004–NMCA–038, ¶¶ 16–17, 135 N.M. 306, 87 P.3d 1088 (rejecting the notion that a passenger in a stopped car, particularly after being asked to identify himself, would feel free to leave). Such seizures are analyzed in two parts: first, whether the officer made a valid investigatory stop; and second, whether the officer's actions during the investigatory detention were reasonably related in scope to the circumstances that initially justified the stop. *Duran,* 2005–NMSC–034, ¶ 23, 138 N.M. 414, 120 P.3d 836. As we discuss later in this opinion, circumstances presented here easily pass both parts of this test.

■ {12} When an officer stops a vehicle for a traffic violation, the officer can lawfully request and inspect the driver's license, vehicle registration, and proof of insurance, in order to verify that the driver is licensed and driving a vehicle that is registered and insured. *Reynolds,* 119 N.M. at 386–88, 890 P.2d at 1318–20; *State v. Romero,* 2002–NMCA–064, ¶ 9, 132 N.M. 364, 48 P.3d 102. The request for these documents is not a "search" because a driver has no expectation of privacy in these documents when requested by a police officer. *Reynolds,* 119 N.M. at 386, 890 P.2d at 1318. When a vehicle is lawfully stopped, the operator of the vehicle must be in immediate possession of a driver's license and must show the license when asked to do so by a peace officer. *See* NMSA 1978, § 66–5–16 (1985); *see also* NMSA 1978, § 66–5–2 (1989) (providing that all drivers must be licensed). In addition, every owner is required to register any motor vehicle that is driven or moved upon a highway and that registration "shall be exhibited upon demand of any police officer."

NMSA 1978, § 66–3–1(A) (2001); NMSA 1978, § 66–3–13 (1978). Finally, all motor vehicles driven on our streets and highways must be insured or the owner of the vehicle must show evidence of financial responsibility; otherwise, the vehicle's operation is prohibited. *See* NMSA 1978, § 66–5–205 (1998).

{13} Although not a search, the request for documents in connection with a traffic stop is nevertheless a seizure or detention that must pass constitutional muster. *Reynolds,* 119 N.M. at 386, 388, 890 P.2d at 1318, 1320. Such a request is constitutionally permissible because "the privacy interest in the documents [is] nonexistent as to a police officer and the detention period [is] de minimis." *Id.* at 388, 890 P.2d at 1320. Thus, continued detention simply to request license, registration, and insurance documents from a driver is not unreasonable and does not violate the Fourth Amendment or Article II, Section 10 of the New Mexico Constitution. *Id.*

{14} After obtaining the documents, the officer may lawfully run a computer check, directly or indirectly by contacting dispatch, in regard to the documents obtained. *Affsprung,* 2004–NMCA–038, ¶¶ 10, 14, 135 N.M. 306, 87 P.3d 1088; *Lowe,* 2004–NMCA–054, ¶ 12, 135 N.M. 520, 90 P.3d 539; *State v. Prince,* 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332; *State v. Taylor,* 1999–NMCA–022, ¶ 14, 126 N.M. 569, 973 P.2d 246; *see also Reynolds,* 119 N.M. at 385, 388, 890 P.2d at 1317, 1320 (holding that continued detention is reasonable, and approving (1) the request for license, registration, and insurance documents; and (2) a computer check on the vehicle's license plate number). We have stated that this check may include a wants and warrants check. *See Affsprung,* 2004–NMCA–038, ¶ 10, 135 N.M. 306, 87 P.3d 1088; *Lowe,* 2004–NMCA–054, ¶ 12, 135 N.M. 520, 90 P.3d 539; *Prince,* 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332; *Taylor,* 1999–NMCA–022, ¶ 14, 126 N.M. 569, 973 P.2d 246. In *Reynolds,* 119 N.M. at 385, 387–88, 890 P.2d at 1317, 1319–20, the Supreme Court noted that the officer ran a wants and warrants check on all occupants of the vehicle and ran a computer check on the vehicle's license plate, and the Court quoted

with approval an Idaho case upholding a warrants check on the driver's license.

{15} In the present case, Defendant attacked the lawfulness of the warrants check on the ground that it was an unlawful warrantless seizure in that it was not based on reasonable suspicion of criminal activity. We do not equate continued detention for a warrants check, on a person properly detained and identified by the officer, with continued detention to investigate possible contemporaneous criminal activity based on nothing more than generalized suspicion or unparticularized hunches that a motorist is engaged in criminal activity. *See Prince,* 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332 ("Generalized suspicions or unparticularized hunches that a person has been or is engaged in criminal activity do not suffice to justify a detention."); *Lowe,* 2004–NMCA–054, ¶ 12, 135 N.M. 520, 90 P.3d 539 (stating, in a routine traffic stop circumstance, that "[c]ontinued or contemporaneous detention for purposes related to ... unlawful activity [other than checking out license, registration, and insurance and running a wants and warrants check in regard to the current validity of the documentation] requires reasonable suspicion, proven through specific articulable facts, that the motorist has been or is engaged in criminal activity").

{16} When the target for identification is a passenger rather than the driver, police have limited avenues to expand the interaction. One avenue, not at play here, is if the officer can point to reasonable and articulable suspicion that other criminal activity is afoot. *Duran,* 2005–NMSC–034, ¶¶ 38, 42, 138 N.M. 414, 120 P.3d 836. Or, as in this case, the passenger may be implicated in the investigation related to the initial stop; in such a case there is no expansion of the basic invasion of a routine traffic stop. *See id.* ¶¶ 37–38 (holding that asking driver general questions about travel plans was reasonably related to the scope of the justification for the initial stop and thus no additional reasonable suspicion is required to justify such questions). Here because Defendant was the owner of the vehicle, asking for his identification and the vehicle's registration was reasonably related to the initial stop and run-

ning the wants and warrants check was a de minimis additional intrusion that was justified.

{17} An officer may not request identification from an innocent passenger when the request is based on "nothing more than a generalized concern about officer safety." *Affsprung,* 2004–NMCA–038, ¶¶ 18, 20, 135 N.M. 306, 87 P.3d 1088. In *Affsprung,* the officer stopped the vehicle, in which the defendant was a passenger, for a faulty license plate light. *Id.* ¶ 2. The officer observed no suspicious behavior before asking the defendant for identification. *Id.* ¶¶ 2, 4. The defendant had no identification, but gave the officer his name, date of birth, and social security number. *Id.* ¶ 2. The officer used the information to run a wants and warrants check on the defendant. *Id.* We noted that, although there is potential harm to an officer during a traffic stop, the defendant's "mere presence" in the stopped vehicle, where the officer had "no suspicion whatsoever of criminal activity or danger of harm from weapons[,]" could not justify even a "minimal intrusion to tip the balance in favor of public or officer safety over individual Fourth Amendment privacy." *Id.* ¶ 20. We held that the request for identification and use of that information to conduct a wants and warrants check on the defendant constituted an unlawful detention. *Id.* ¶ 21.

**Present Case: The Officer Engaged in Lawful Activities**

{18} No issue exists regarding the validity of the stop in this case. The issues relate to asking for identification and documentation, and running a computer warrants check. The particular facts in this case fall between those cases involving a driver who is the owner of a vehicle and required to produce the appropriate documents upon request as in *Reynolds,* and an innocent passenger who is exhibiting no suspicious behavior as in *Affsprung.* The State argues that *Affsprung* was wrongly decided and urges us to reject the holding in that case. We decline to do so. The facts in *Affsprung* are distinguishable from those in this case and it is not necessary to revisit *Affsprung* in order to decide this case. 2004–NMCA–038, ¶ 2, 135 N.M. 306, 87 P.3d 1088. Here, the driver was not the owner and could not produce the required documents for the vehicle. Defendant was not a passenger who was there "solely by virtue of the coincidence he was a passenger in the vehicle." *Id.* ¶ 20. Instead, as the owner of the stopped vehicle, Defendant was responsible for assuring that the vehicle was properly registered and insured, and was also responsible for giving permission to the driver to operate the vehicle.

{19} Thus, it was reasonable for Officer Dudewicz to turn to the owner-passenger for answers. The circumstances are no different here than in *Reynolds,* where the inquiry concerned the driver. Officer Dudewicz needed to ensure that the vehicle was properly registered and insured, and to investigate whether the driver was in lawful possession of the vehicle. The officer was justified in asking for and obtaining the owner-passenger's identification, registration, and insurance documentation, and then running a computer check related to these matters. No different than a minimal detention of an owner-driver for this type of inquiry, the minimal detention of the owner-passenger for these purposes was reasonable and lawful. The officer's activities in asking Defendant, the owner of the vehicle, for identification, registration, and insurance documentation, and in pursuing a computer warrants check based on the identification supplied by Defendant, were therefore constitutionally permissible and did not constitute valid grounds on which to suppress any evidence.

{20} We do not see a reason to limit an officer to a visual cross-check of identification of an owner-passenger with registration and insurance documentation. Under New Mexico law, the officer is not limited to such a cross-check when detaining a driver. Rather, our case law considers the continuing intrusion of a computer check, including a wants and warrants check relating to license or registration, as a de minimis procedure related to the government's and the officer's legitimate interests in making sure that the driver is properly licensed and driving a vehicle that is properly registered and insured. *Reynolds,* 119 N.M. at 386–88, 890 P.2d at

1318–20; *Lowe*, 2004–NMCA–054, ¶ 12, 135 N.M. 520, 90 P.3d 539; *Prince*, 2004–NMCA–127, ¶ 9, 136 N.M. 521, 101 P.3d 332; *Romero*, 2002–NMCA–064, ¶ 9, 132 N.M. 364, 48 P.3d 102; *Taylor*, 1999–NMCA–022, ¶ 14, 126 N.M. 569, 973 P.2d 246.

## DEFENDANT'S MOTION FOR REHEARING

{21} In our now withdrawn opinion filed on February 1, 2006, we stated the following:

As an initial matter, we note that Defendant did not argue that the warrants check was unrelated to license, registration, and insurance. There is nothing in the record indicating what particular information the officer sought in employing the computer check, what information other than outstanding warrants was retrievable and retrieved from the check, or what, if anything, the computer check showed regarding outstanding warrants other than, as in this case, the general revelation that Defendant had an outstanding misdemeanor warrant. Our cases relating to a warrants check seem to assume that the warrants check does relate to license, registration, or insurance. *See Taylor*, 1999–NMCA–022, ¶ 14, 126 N.M. 569, 973 P.2d 246 (noting that the officer "was in the process of performing a permissible wants and warrants inquiry," and stating that the officer "is entitled to verify that the driver is both licensed and driving a car that is registered and insured" (internal quotation marks and citation omitted)); *see also Affsprung*, 2004–NMCA–038, ¶ 10, 135 N.M. 306, 87 P.3d 1088 (stating the officer "is also authorized to run a wants and warrants check in relation to the driver to ensure the continued validity of the documents provided"). Until we are shown in a case before us that a warrants check is unrelated to license, registration, or insurance, we will assume that the check is so related, and under that assumption we hold that a computer warrants check upon obtaining license, vehicle registration, or insurance documentation is a de minimis intrusion supporting strong governmental and police officer interests in knowing whether the driver or owner with whom the officer is dealing has valid driving and vehicle-related documentation and that the vehicle is lawfully registered and insured.

{22} This discussion caused Defendant to file a motion for rehearing asserting that we did not follow the correct standard of review because we did not view the facts about the purpose and function of the wants and warrants check in a light most favorable to Defendant. In his motion for rehearing, Defendant asserted that we viewed the facts in a light most favorable to the State by assuming that the warrants check was related to license, registration, or insurance. Defendant asked us to affirm the district court or, alternatively, remand for an evidentiary hearing relating to the purpose and function of the warrants check. For the following reasons, we are not persuaded to grant the motion.

{23} At no time during the suppression hearing in district court did Defendant seek to invalidate his detention on the specific ground that the warrants check was completely unrelated to license, registration, or insurance, and therefore improper for that reason. In the present case, we have no doubt that the parties and the district court tried the suppression issue either under the assumption that the warrants computer check performed was related to license, registration, or insurance, or without regard to the purpose and function of the particular computer warrants check. Argument by counsel and discussions with the court during the suppression hearing focused on whether the officer needed additional consent from Defendant to continue with the warrants check and whether there were less intrusive ways to confirm Defendant's ownership status.

{24} Further, on appeal Defendant did not argue for affirmance based on the specific ground that the warrants check was completely unrelated to any question of license, registration, or insurance. Rather, the argument implicitly assumed or acknowledged that the warrants check would show related information. Defendant's track on appeal was the same as that of the district court, namely, that the investigative method for checking out ownership and insurance should

not have been by a warrants check because there were less intrusive ways in which registration and insurance information could be checked. No better indication of this is Defendant's argument:

> After the deputy learned that the driver was unable to produce proof of registration and insurance and that [Defendant] owned the vehicle ..., the least intrusive means of determining whether the vehicle was registered and insured would have been to ask [Defendant] *only* whether he could produce proof of registration and insurance. Instead, the deputy also asked for [Defendant's] driver's license and then used it to conduct a wants and warrants check on him.... Accordingly, the deputy's demand for [Defendant's] license and retention of it while running a wants and warrants check were not the least intrusive means of determining whether the car was registered and insured.

{25} At best, Defendant misconstrues the purpose for our discussion in regard to the purpose and function of a computer warrants search. Our purpose was to point out the lack of discussion in our case law about whether computer warrants checks at issue in any particular case actually focuses on, or must focus on license, registration, or insurance. Clarification is needed. Defendant's motion for rehearing presented no ground for us to affirm the district court, nor any basis for a remand to try an issue not raised or addressed in the suppression hearing. Defendant's motion for rehearing presented a sophistical challenge only. We deny the motion.

## CONCLUSION

{26} We reverse the order granting Defendant's motion to suppress and remand to the district court for continuation of the proceedings in this case.

{27} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and CELIA FOY CASTILLO, Judges.