IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

    Plaintiff-Appellant,

v.                                         NO. 29,124

STEPHEN MCCORKLE,

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly
Albuquerque, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

    The State appeals the district court's order granting Defendant's motion to suppress. [MIO 1] We proposed to affirm in a notice of proposed summary disposition, and the State has filed a timely memorandum in opposition. Remaining

unpersuaded by the State's memorandum, we affirm the order granting the motion to suppress.

The district court's ruling on Defendant's motion to suppress presents a mixed question of law and fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. On appeal, we defer to the district court's findings of fact as long as they are supported by substantial evidence. *See State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. We then review de novo the district court's application of law to those facts. *State v. Affsprung*, 2004-NMCA-038, ¶ 6, 135 N.M. 306, 87 P.3d 1088.

Based upon the information contained in the docketing statement and memorandum in opposition, we understand that the following testimony was introduced at the suppression hearing. Officer Rice testified that he stopped a vehicle at 9:30 p.m. for operating without active headlights. [MIO 3; DS 2] He thought it suspicious that the vehicle came to a stop within one foot of another vehicle. [DS 2]

Officer Rice testified that, after stopping the vehicle, he observed that the driver was disoriented, and he suspected her of being under the influence of alcohol or drugs. [MIO 3; DS 2] He asked the driver and the passenger, Defendant, for their identification. [MIO 3; DS 2] He then ran a warrants check on Defendant's information and learned that Defendant had an outstanding warrant. [MIO 3; DS 3]

Rice arrested Defendant and during a pat-down search pursuant to arrest, discovered alleged drug paraphernalia and controlled substances. [MIO 3; DS 3] Rice testified that he requested Defendant's identifying information to record his presence as a witness to the suspected crime of driving under the influence (DWI) and to determine Defendant's driver's license status in case the vehicle would be released to him. [MIO 3; DS 3]

Defendant moved to suppress the evidence contending that, as a passenger in a vehicle, the officer was not justified in requesting his identification because he had no suspicion that Defendant was involved in criminal activity. [RP 32] The district court agreed, rejected the State's proposed findings of fact and conclusions of law, and granted Defendant's motion to suppress. [RP 49-50]

On appeal, the State contends that the district court erred in granting Defendant's motion to suppress because: (1) the Fourth Amendment does not prohibit an officer from asking for a passenger's identification as long as the request does not prolong the detention; (2) even if officers are usually required to have reasonable suspicion before seeking a passenger's identifying information, the officer was justified in requesting the information in this case; and (3) the arrest warrant removed the taint from any unlawful seizure. [MIO 1-2] We disagree and affirm.

Turning to the State's second contention first, we noted in our notice of

proposed summary disposition that a traffic stop is not a consensual encounter, but a seizure of the vehicle and its occupants. *See State v. Rubio*, 2006-NMCA-067, ¶ 11, 139 N.M. 612, 136 P.3d 1022. Therefore, asking for identifying information from Defendant constituted a detention. [DS 3] *See Affsprung*, 2004-NMCA-038, ¶¶ 16-17 (rejecting the notion that a passenger would feel free to leave during a routine traffic stop, particularly after being asked for identification). In its memorandum in opposition, the State no longer disputes that the request for Defendant's identification constituted a detention. [MIO 5-6]

This Court has previously held that an officer cannot request identification from a passenger unless the officer can point to reasonable and articulable suspicion that the passenger is involved in criminal activity or the officer has a particularized concern for officer safety. *Id.* ¶¶ 19-20; *see Rubio*, 2006-NMCA-067, ¶ 16. In *Rubio*, this Court recognized that an officer may also expand his investigation to include the passenger if the passenger is implicated in the investigation related to the initial stop. *See* 2006-NMCA-067, ¶ 16.

In *Affsprung*, an officer conducting a routine traffic stop asked a passenger for his identifying information and used the information to run a warrant check. 2004-NMCA-038, ¶ 2. Because the officer had no reasonable suspicion or particularized concern about officer safety, we concluded that the officer did not have a legitimate

basis for requesting the passenger's identification. *Id.* ¶¶ 19-21. Thus, the officer's request for the passenger's identification and the use of that information to run a warrant check in connection with the traffic violation constituted an unlawful detention. *Id.*

In contrast to our holding in *Affsprung*, this Court decided in *Rubio* that the officer was justified in asking for a passenger's identification and then running a computer check specifically because the request was reasonably related to the initial stop. *See* 2006-NMCA-067, ¶¶ 18-20. In *Rubio*, an officer stopped a vehicle after observing that the driver was not wearing a seatbelt. *Id.* ¶ 3. After the driver had a difficult time producing his driver's license, registration, and insurance, the driver told the officer that the owner was a passenger in the vehicle. *Id.* ¶ 4. The officer asked the passenger-owner for his identification and ran a check on him, which revealed an outstanding warrant. *Id.* On appeal, we concluded that the officer had a legitimate reason to determine whether the passenger was the registered owner and had insurance. *Id.* ¶ 8. Because the passenger was the owner of the vehicle, this Court held that asking for his identification and the vehicle's registration was reasonably related to the initial stop and running the wants and warrant check was a justified, de minimis intrusion. *Id.* ¶¶ 8, 18-20.

In our notice of proposed summary disposition, we applied *Affsprung* and

5

proposed to hold that Officer Rice did not have reasonable suspicion to detain Defendant merely because he was a passenger in a vehicle being detained for suspicion of DWI. [DS 3] 2004-NMCA-038, ¶¶ 19-21. We proposed to affirm the suppression order because there was no evidence supporting a reasonable and articulable suspicion that Defendant was involved in criminal activity, no showing of a particularized concern for officer safety, and no evidence indicating that Defendant was implicated in the investigation related to the initial stop.

The State argues that *Affsprung* does not apply in this case because Officer Rice had a sufficient, independent justification for requesting Defendant's identification that was "reasonably related to his investigation and which did not prolong the seizure." [MIO 2, 10-14] The State contends that unlike *Affsprung*, the officer in this case requested Defendant's identification to identify him as a potential witness to the crime of DWI and to determine if Defendant had a valid driver's license and could take custody of the vehicle if the driver was arrested. [MIO 2-3, 10, 13] It contends that in this case, as in *Rubio*, the officer had a specific reason to request the passenger's identification. [MIO 12] We disagree.

As an initial matter, we note that the State submitted proposed findings of fact and conclusions of law on this issue which the district court specifically rejected in its order. [RP 50] "When a trial court rejects proposed findings of facts or conclusions

6

of law, we assume that said facts were not supported by sufficient evidence." *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009 -NMSC- 010, ¶ 44, ___ N.M. ___, ____ P. 3d ____. More to the point, "[f]ailure of a district court to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative. *Landskroner v. McClure*, 107 N.M. 773, 775, 765 P.2d 189, 191 (1988). We defer to the district court's findings of fact on factual matters, here indicating that the officer's testimony as to the grounds for asking for Defendant's identification was not believed by the district court, [MIO 3; RP 49] *See Jason L.*, 2000-NMSC-018, ¶ 10.

Moreover, even if the district court did find the officer's testimony creditable as to the reasons he asked Defendant for identification, we disagree that these reasons provide sufficient justification given that there was no testimony suggesting that the driver asked the officer to find another driver for the vehicle, that the officer inquired into whether Defendant could drive, [MIO 13] or that there was any testimony or evidence to suggest that Defendant owned the vehicle or might exercise any control over it. It also does not appear that there was even any evidence regarding whether the driver was actually arrested for DWI. Further, the information sought was more than needed to put Defendant on a witness list, but just enough to run a warrants check. All of these favor our view that the district court acted properly.

In *Rubio*, the passenger was the owner of the vehicle and therefore responsible

for assuring that the vehicle was properly registered and insured, and responsible for giving permission to the driver to operate the vehicle. 2006-NMCA-067, ¶¶ 18-19. The defendant's status as owner of the vehicle led this Court to conclude that he "was not a passenger who was there solely by virtue of the coincidence he was a passenger in the vehicle." *Id.* ¶ 18 (internal quotation marks and citation omitted).

After considering the holdings and analysis in *Affsprung* and *Rubio*, we conclude that this case is distinguishable from *Rubio* and controlled by *Affsprung*. Therefore, Officer Rice was not justified by an independent reason to detain Defendant by asking for his identification, and the State's attempt to justify detention of Defendant based upon the investigation of the driver for DWI runs contrary to the holding and analysis of *Affsprung*. *See* 2004-NMCA-038, ¶ 20 (stating that a defendant's mere presence in the stopped vehicle, when the officer had no reasonable suspicion of criminal activity or danger from weapons, does not justify a request for identification and use of that information to conduct a warrant check on the defendant).

Finally, we are not persuaded by the State's reliance on our Supreme Court's opinion in *State v. Duran*, 2005-NMSC-034, 138 N.M. 414, 120 P.3d 836, in support of its argument that the officer was justified in determining Defendant's identity as "it was related to his investigation of the driver." [MIO 14] The issue facing the

8

Supreme Court in *Duran* was "whether a police officer's questioning of a stopped motorist about her travel plans exceeded the permissible scope of a search and seizure under the Fourth Amendment." *Id.* ¶ 1. The Court held that asking a driver questions about travel plans was reasonably related in scope to the initial justification for the traffic stop. *Id.* ¶ 42.

The State is correct that in *Duran*, the officer requested the driver's license of the passenger and ran a warrant check. [MIO 14] *See id.* ¶¶ 4, 8. However, the *Duran* Court was not asked to consider the issue addressed in *Affsprung* of whether a law enforcement officer's request for a passenger's identifying information during a routine traffic stop constituted an unlawful detention under the Fourth Amendment. *See* 2004-NMCA-038, ¶¶ 19-21. Therefore, it did not hold that running a warrant check on a passenger's license during a routine traffic stop was not a Fourth Amendment violation and we will not consider it as support for that proposition. *See State v. Rodarte*, 2005-NMCA-141, ¶ 18, 138 N.M. 668, 125 P.3d 647 (observing that cases are not authority for propositions not considered).

In addition to arguing that *Affsprung* does not apply to the circumstances in this case, the State contends in its memorandum in opposition that *Affsprung* has been "effectively overruled" by the United States Supreme Court in *Arizona v. Johnson*, 129 S. Ct. 781 (2009). [MIO 2, 7-10] We are unpersuaded that the decision in

9

*Johnson* warrants reversal in this case for two reasons.

First, the State characterizes the decision in *Johnson* as standing for the proposition that an officer may inquire into matters unrelated to the justification for a stop as long as these inquiries do not measurably extend the duration of the stop. [MIO 7] However, our review of the *Johnson* opinion indicates that the Court was only considering whether and when an officer may frisk a passenger based upon safety concerns, not when an officer may ask a passenger for identification or otherwise question the passenger about matters unrelated to the reason for the stop. *Id.* at 784. In *Johnson*, officers were suspicious that the defendant/passenger was involved in gang activity based upon the defendant's clothing, the neighborhood, and the fact that the defendant had a scanner in his pocket which was indicative of criminal activity. *Id.* at 785. The defendant volunteered that he was from a town known to be the home of a gang and volunteered that he had served time in prison for bank robbery. *Id.* The officers asked the defendant to step out of the car for further questioning and then searched him for weapons because they suspected that the defendant might be armed. *Id.* The defendant sought to suppress the gun as a fruit of an unlawful search, and the Supreme Court affirmed the district court's denial of the motion to suppress. *Id.* at 785-88.

In *Johnson*, the Court focused on the officer's safety concerns. *See id.* at 788,

10

n. 2 (noting that the Arizona Court of Appeals had assumed "without deciding that [the officer] had reasonable suspicion that [the defendant] was armed and dangerous" and then stating that it would not foreclose the Arizona appellate court's "consideration of that issue on remand"). Officer safety was not an issue in this case and under *Affsprung*, an officer is entitled to question or pat-down a passenger if such actions are necessary due to safety concerns. *See Affsprung*, 2004-NMCA-038, ¶¶ 19-20 (requiring a particularized concern for officer safety to justify a request from the passenger). This is consistent with the holding in *Johnson*.

Furthermore, to the extent *Johnson* does stand for the proposition that no additional justification is needed under the Fourth Amendment as long as the officer's inquiries do not prolong the stop, the State failed to preserve this argument by raising it to the district court. [MIO 9; RP 42-48] *See* Rule 12-216 (A) NMRA (stating that, in order to preserve a question for review, "it must appear that a ruling or decision by the district court was fairly invoked"); *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. In order to preserve its argument, the State must have alerted the district court to the theories on which it relied in support of its argument against suppression. *See State v. Harrison*, 2000-NMSC-022, ¶ 27, 129 N.M. 328, 7 P.3d 478; *cf. State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct. App. 1986) (noting that to preserve issue for appeal, defendant must make timely objection that

11

specifically apprizes trial court of nature of error).  It does not appear that the State raised the contention that the officer could request Defendant's identification as long as it did not prolong the stop.  [RP 42-48]  Therefore, even if *Johnson* supports this proposition, we decline to consider it due to lack of preservation.  *See Harrison*, 2000-NMSC-022, ¶ 29; *cf. In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431 (noting that an appellate court will only consider issues raised in the trial court and issues involving matters of jurisdictional or fundamental error).

Finally, the State argues that "the existence of a valid arrest warrant dissipated any taint from the allegedly unlawful seizure of Defendant."  [MIO 2, 14-19] They have not shown where this was raised below,  [RP 42-48]  and we decline to consider it.  *See Harrison*, 2000-NMSC-022, ¶ 29; *cf. In re Aaron L.*, 2000-NMCA-024, ¶ 10. However we also note that, even if this issue had been preserved, we would nonetheless affirm because in *Affsprung*, the defendant was also arrested pursuant to an outstanding warrant, and we nonetheless held that her unlawful detention tainted the evidence.  2004-NMCA-038, ¶¶ 3, 19-20.  Therefore, we hold that the evidence was correctly suppressed in this case as well.

**CONCLUSION**

For the foregoing reasons as well as those set forth in our notice of proposed

disposition, we affirm the order granting Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____

**JONATHAN B. SUTIN, Judge**

_____

**CELIA FOY CASTILLO, Judge**