IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.                                      **NO. 27,920**

**CALVIN BENIOH,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, District Judge**

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

Jennifer R. Albright
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Chief Judge.**

Defendant pleaded guilty to one count of attempting to give or sell alcoholic beverages to a minor and one count of possession of marijuana, reserving the right to appeal the district court's denial of his motion to suppress evidence. We affirm.

**BACKGROUND**

The material facts are not in dispute. Officer Glenn Slaughter, an agent with the New Mexico Department of Public Safety, Special Investigations Division, was the sole witness at the hearing on Defendant's motion to suppress. He testified that on the date in question he was on duty investigating possible violations of the Liquor Control Act, NMSA 1978, §§ 60-7B-1 to -13 (1981, as amended through 2004); specifically, he was looking for adults attempting to buy alcohol for minors or for minors in possession of alcohol. *See* § 60-7B-1(A), (C).

At approximately 11:00 p.m., Slaughter was watching a Mustang gas station and convenience store from his position parked in a grocery store parking lot on the other side of a four-lane highway. While watching through binoculars, he saw a pickup truck drive up and park by the side of the convenience store outside the view of the store clerk. Defendant exited from the passenger side of the truck and entered the store.

Slaughter testified that he saw Defendant through the binoculars and thought he looked to be of "questionable age"; he appeared to be close to the age of twenty-one "plus or minus five years either direction." When questioned on cross-examination as to the clues he had that Defendant might be under twenty-one,

Slaughter testified that Defendant did not have facial hair but stated that he could not specifically identify any other "youthful characteristics." He further testified that he was not certain about the driver's appearance due to the lighting and the way the truck was parked.

Slaughter testified that he saw Defendant go to the cooler section of the store, then to the counter, and then exit with two semi-transparent bags that appeared to contain forty-ounce bottles of alcohol. He testified that he thought Defendant bought alcohol based on his knowledge, training, and experience as to the type of liquid contained in forty-ounce bottles and the fact that Defendant had gone to the area of the store where Slaughter knew alcohol was kept.

Slaughter followed the truck as it left the parking lot. He testified that persons committing Liquor Control Act violations often go to a different location to exchange the alcoholic beverages. Slaughter had a license check run on the vehicle and learned that it was registered to someone who was born in 1964.

Slaughter followed the truck to a second convenience store where it again parked out of view of the store clerk, and Defendant got out. Slaughter parked approximately 50 to 70 feet away and watched with binoculars. This time, Slaughter could see the driver, who also appeared young; Slaughter testified that the driver was

3

much too young to be the owner of the vehicle who was reportedly born in 1964. Slaughter could not see where Defendant went in the store, and he could not see what he purchased at the counter. However, he again saw Defendant leave the store with what appeared to be bags of forty-ounce bottles of liquor. Slaughter testified that he had an unobstructed view of what Defendant was carrying from the second store and the bags definitely contained forty-ounce bottles. He testified that the amount of alcohol appeared excessive for one individual.

After the truck left the second convenience store, Slaughter followed it for some time before pulling it over based on his suspicions that either Defendant was under twenty-one and had used false identification to purchase the alcohol, or Defendant had purchased alcohol on behalf of minors. Slaughter approached the truck and asked the driver and Defendant for their identification. After thoroughly examining Defendant's identification using his training, knowledge and expertise, Slaughter determined that Defendant had a true and genuine New Mexico driver's license indicating that he was twenty-one years old. The driver was eighteen. Slaughter determined that there was alcohol in the bags Defendant took from the convenience stores, but the bags were on the floor of the passenger side between Defendant's feet so Defendant had physical control over the alcohol.

4

Slaughter "lectured" Defendant and the driver about the laws on transferring alcohol to minors and minors in possession of alcohol and then let them go. He testified that he was still not comfortable so he continued to follow the truck as it went to a Sonic drive-in where Defendant had said he worked.

Slaughter saw Defendant get out of the truck and go into the employee entrance of the Sonic. Later, a second person, Johnson, approached the driver's window of the truck. After speaking with the driver, Johnson entered the Sonic and walked out of the employee door. He walked to the passenger side of the truck carrying a blue backpack which initially appeared empty. He opened the passenger side door, appeared to take something off of the floor, and then went into the Sonic through the employee's entrance while carrying the blue backpack that appeared to contain something of weight. He emerged with what appeared to be an empty backpack and then repeated the process—taking something off of the floor on the passenger side of the vehicle and carrying the weighted backpack back into the Sonic through the employee's entrance. Johnson came out of the Sonic empty-handed, got into the truck, and the driver and Johnson left the parking lot.

Slaughter followed the truck and stopped it. The record shows that through subsequent investigation, Slaughter learned that the alcohol that Defendant had

purchased at the two convenience stores was transferred to minors. Defendant was charged with three counts of selling or giving alcoholic beverages to a minor. A search incident to Defendant's arrest on these charges revealed that Defendant had less than one ounce of marijuana, and Defendant was also charged with one count of possession of one ounce or less of marijuana.

Defendant moved to suppress the information obtained when Slaughter stopped the truck while Defendant was a passenger and moved to exclude the evidence of the alcohol and marijuana as fruit of the poisonous tree. The district court denied the motion, and Defendant entered a conditional plea to one count of attempting to sell or give alcohol to minors and one count of possession of marijuana, one ounce or less, reserving his right to challenge the denial of the motion to suppress.

**STANDARD OF REVIEW**

The district court's ultimate ruling on Defendant's motion to suppress involves mixed questions of fact and law. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. In reviewing the district court's denial of a motion to suppress, we determine "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We

defer to the district court's findings of fact to the extent that they are supported by substantial evidence. *Id.* However, we "review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review." *State v. Patterson*, 2006-NMCA-037, ¶ 13, 139 N.M. 322, 131 P.3d 1286. In this case, the district court did not enter any factual findings or conclusions of law. Therefore, we will employ all reasonable presumptions in support of the district court's ruling. *See Jason L.*, 2000-NMSC-018, ¶ 11.

**DISCUSSION**

When an officer stops an automobile to investigate a possible crime, we analyze the reasonableness of the stop and ensuing investigatory detention in accordance with the two-part test in *Terry v. Ohio*, 392 U.S. 1 (1968). *State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836. We ask whether the stop was justified at its inception and whether the officer's actions during the stop were reasonably related to the circumstances that justified the stop. *Id.* In order for the stop to be justified at its inception, "[t]he officer, looking at the totality of the circumstances, must be able to form a reasonable suspicion that the individual in question is engaged in or is about to be engaged in criminal activity." *State v. Contreras*, 2003-NMCA-129, ¶ 5, 134 N.M. 503, 79 P.3d 1111. "A reasonable

suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Jason L.*, 2000-NMSC-018, ¶ 20

Defendant claims that Slaughter was not authorized to stop the truck and question him as a passenger because he did not have reasonable suspicion that Defendant had committed or was about to commit the crimes of minor in possession of alcohol or the giving or selling of alcoholic beverages to minors. *See State v. Rubio*, 2006-NMCA-067, ¶ 16, 139 N.M. 612, 136 P.3d 1022 (holding that an officer's request for identification from a passenger is lawful if the passenger is "implicated in the investigation related to the initial stop"). In justifying the stop, Slaughter testified that his suspicion was based on the following factors: (1) the youthful appearance of Defendant and the driver, (2) the fact that the driver remained in the truck while the purchases were made, (3) the purchase of what appeared to be alcohol at two different convenience stores, (4) the driver's decision to park outside the view of the convenience store clerks, and (5) the purchase of an amount of alcohol that appeared to be excessive for one person. In light of these factors, the State argued that Slaughter was justified in stopping and briefly detaining Defendant based on his reasonable suspicion that Defendant was committing the crimes of being a minor in

8

possession of alcohol or giving or selling alcohol to minors. *See Contreras*, 2003-NMCA-129, ¶ 5.

Defendant contends that Slaughter lacked a reasonable individualized suspicion that Defendant was a minor based on Defendant's youthful appearance. *See Jason L.*, 2000-NMSC-018, ¶ 20 (holding that in order to justify the seizure, the officer's suspicions must rest on specific, articulable facts, which are particular to the individual who is detained). Defendant notes that Slaughter could not describe or explain what is meant by "youthful," and claims that his lack of facial hair is not evidence of being under age twenty-one. While lack of facial hair alone is insufficient to support a reasonable suspicion that a person is under age twenty-one, we are not persuaded that "youthful appearance" is a meaningless term merely because Slaughter was unable to describe it with specificity. Furthermore, we believe the district court could make a determination whether Slaughter's suspicions as to Defendant's age were justified, given that Defendant was in the courtroom. At the hearing, Slaughter testified that Defendant "looks very youthful in age, as you can see even here today. . . . He does not appear to be [twenty-one], he definitely meets the criteria of five or six years plus, either way." The district court was able to personally observe Defendant's appearance and is in a better position than this Court to judge the

accuracy of Slaughter's assessment that Defendant appeared to be younger than twenty-one. *See Neal*, 2007-NMSC-043, ¶ 15 (recognizing that the appellate court does "not sit as trier of fact [because] the district court has the best vantage from which to resolve questions of fact and to evaluate witness credibility"). We will defer to the district court on such a factual issue. *Id.*

Defendant also contends that Slaughter's admission that clerks in the convenience stores had a high compliance rate for checking identifications before selling alcohol defeats a finding that Slaughter suspected Defendant might be a minor. We disagree in light of Slaughter's testimony, taken as a whole. *See Duran*, 2005-NMSC-034, ¶ 23 (recognizing that a reviewing court looks at the totality of the circumstances in determining reasonable suspicion which is a "fact-specific inquiry that does not lend itself to bright-line rules").

Slaughter testified that based on his training and experience, store clerks are often unable to discern the validity of an identification or driver's license because it is easy to manufacture a false State of New Mexico driver's license, and he testified as to methods used to manufacture fake licenses. This testimony rebuts Defendant's claim that Slaughter could not have reasonably suspected that Defendant was a minor in possession of alcohol because he knew the convenience store clerks would have

checked Defendant's identification before selling alcohol. *See Neal*, 2007-NMSC-043, ¶ 21 (recognizing "that officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person" (internal quotation marks and citation omitted)); *see also State v. Harbison*, 2006-NMCA-016, ¶ 27, 139 N.M. 59, 128 P.3d 487 (filed 2005) (recognizing that analysis of the totality of the circumstances does not require the law enforcement officer have scientific certainty but instead, an officer can base a determination of reasonable suspicion by making commonsense inferences and judgments about human behavior), *aff'd*, 2007-NMSC-016, 141 N.M. 392, 156 P.3d 30.

Defendant also makes various contentions regarding the reliability of Slaughter's observations. For example, he appears to argue that Slaughter's view was insufficient given that he was initially parked across a four-lane highway at 11:00 p.m. He further challenges Slaughter's belief that Defendant had purchased alcohol because Slaughter relied on the shape of the items in the bags and the fact that Defendant went to the cooler where alcoholic beverages are kept. We are unpersuaded that these uncertainties render Slaughter's observations insufficiently reliable.

As to Slaughter's ability to view Defendant, we defer to the district court on such matters because it was entitled to believe Slaughter's testimony that he could see Defendant clearly through the binoculars. *See Neal*, 2007-NMSC-043, ¶ 15 (recognizing that the district court is in the best position to "resolve questions of fact and to evaluate witness credibility"). When assessing the reasonableness of Slaughter's belief that Defendant purchased alcohol, the district court could consider the totality of the circumstances, which includes Slaughter's additional testimony that due to his personal knowledge, training, and experience, he knew the location in the store where alcoholic beverages were kept, and he knew that alcohol is often contained in forty-ounce bottles of a color similar to the bottles carried by Defendant. Based upon all of the testimony, the district court could conclude that the evidence was sufficient for Slaughter to form a reasonable suspicion that Defendant was purchasing alcohol. *Id.* ¶ 21 (recognizing that officers draw on their personal experience and training in making inferences and deductions).

Defendant also stresses that, similar to the youthful offender in *Jason L.*, Defendant and the driver in this case had done nothing illegal. We agree that Slaughter did not observe any objectively illegal activity. However, in *Jason L.*, the district court granted the defendant's motion to suppress; consequently, on appeal the

evidence was viewed in the light most favorable to the defendant, and all presumptions were made in favor of the district court's ruling granting the motion to suppress. 2000-NMSC-018, ¶¶ 10-12, 23. Viewed in that light, the only suspicious conduct that was attributable to the defendant was the "wearing [of] a coat of unknown weight on a summer evening and [the] walking slowly in the company of someone who was fussing with his waistband and looking back at police officers." *Id.* ¶ 22. Viewing that evidence in the light most favorable to the defendant, our Supreme Court held that "the district court correctly concluded that the officers lacked reasonable suspicion to detain [the d]efendant for investigation." *Id.*

In this case, the district court denied the motion to suppress, and we therefore view the evidence in the light most favorable to the State as the prevailing party. *See id.* ¶¶ 10-11. Slaughter testified to a number of legal activities that when coupled with the youthful appearance of Defendant and the driver, are sufficient to support the district court's finding that Slaughter had reasonable suspicion to detain Defendant. These activities include the driver's failure to leave the truck, which was parked out of sight of the store clerks, and Defendant's purchase of what appeared to be an excessive amount of alcohol for one person at two different convenience stores. *See Harbison*, 2007-NMSC-016, ¶ 15 (recognizing that "[a] reasonable suspicion of

13

criminal activity can arise from wholly lawful conduct . . . [and] the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts" (internal quotation marks and citation omitted)).

Defendant also argues that Slaughter exceeded the bounds of a proper investigatory stop by continuing to investigate even after verifying that Defendant was twenty-one and was in control of the alcohol. *See State v. Robbs*, 2006-NMCA-061, ¶¶ 23-24, 139 N.M. 569, 136 P.3d 570 (recognizing that "the scope of the search and seizure must be justified by and limited to the circumstances that created reasonable suspicion for the stop" and "the investigatory stop must come to an end when the initial suspicion of illegal conduct is dispelled"). We disagree. After stopping the car, Slaughter examined the driver's license and Defendant's identification and determined that Defendant was twenty-one and in physical control of the alcohol. These actions were justified by the purpose of the stop, to ascertain whether a minor was in possession of alcohol. *Id.* ¶ 23.

After learning that Defendant was twenty-one and in physical control of the alcohol, Slaughter's investigation stopped; he lectured the driver and Defendant on the law, but he did not search the vehicle or its occupants and did not further question

14

Defendant or the driver. Therefore, the scope of Slaughter's investigation was reasonable in light of the circumstances surrounding the stop. *Id.* ¶ 19.

Furthermore, we are not persuaded by Defendant's citation to *State v. Flores*, 1996-NMCA-059, ¶ 15, 122 N.M. 84, 920 P.2d 1038, to support his contention that Slaughter's behavior in continuing to follow and "surveilling" Defendant was an impermissible extension of the investigation requiring continued reasonable suspicion. In *Flores*, police officers stopped the defendant's truck and then kept the defendant in custody for several hours. *Id.* ¶¶ 4, 12. In this case, Slaughter merely continued to follow the truck without questioning or detaining Defendant; the seizure and investigation of Defendant did not continue merely because the officer continued to follow the truck in which Defendant was a passenger. *See State v. Walters*, 1997-NMCA-013, ¶ 16, 123 N.M. 88, 934 P.2d 282 (filed 1996) (holding that the defendant was not "seized" as a consequence of being followed by an officer); *see also State v. Calvillo*, 110 N.M. 114, 117, 792 P.2d 1157, 1160 (Ct. App. 1990) (holding that there is no search "in the constitutional sense" if an officer merely "employs his natural senses from a place where he has a right to be" because there is "an implied permission to the public to enter which necessarily negates any reasonable expectation of privacy concerning observations made there").

15

Finally, we disagree that the stop was pretextual because Slaughter's "real" belief was that Defendant was going to sell alcohol to minors, not that Defendant might be a minor in possession. *See State v. Ochoa*, 2009-NMCA-002, ¶¶ 16, 19, 146 N.M. 32, 206 P.3d 143 (filed 2008) (recognizing that, in a pretexual stop, the stop is "permitted by the traffic code, but initiated for an unconstitutional reason"), *cert. granted*, 2008-NMCERT-012, 145 N.M. 572, 203 P.3d 103. Slaughter never claimed that he stopped the truck due to a traffic code violation or any other reason unrelated to a violation of the Liquor Control Act. *Id.* ¶ 40 (stating that, to establish a presumption of pretext, the defendant must show that "the officer had an unrelated motive that was not supported by reasonable suspicion").

Moreover, the facts do not support a finding that Slaughter's concern that Defendant might be a minor was only a pretext for stopping the vehicle. Slaughter testified that it was easy to obtain an apparently valid false identification that would mislead someone such as a store clerk. Once Slaughter stopped the vehicle and examined Defendant's identification, his suspicion that Defendant might be a minor was alleviated, and at that point, he may have continued to follow the truck because he continued to suspect that Defendant might be transferring the alcohol to minors. However, this does not negate Slaughter's testimony that he initially stopped the

vehicle because he suspected the crimes of either minor in possession or transfer of alcohol to a minor. Because Slaughter was justified in stopping the vehicle and investigating based on his reasonable suspicion that Defendant might have been a minor in possession of alcohol, we need not consider whether the same facts are also sufficient to establish a reasonable suspicion that Defendant was committing or had committed the crime of transferring alcohol to minors.

**New Mexico Constitution**

Defendant contends that his rights guaranteed under Article II, Section 10 of the New Mexico Constitution were also violated. He argues that the heightened protections under the New Mexico Constitution are applicable to the facts of his case. We disagree.

We agree with Defendant that Article II, Section 10 of the New Mexico Constitution has been interpreted more broadly than its federal counterpart. *See State v. Paul T.*, 1999-NMSC-037, ¶ 13, 128 N.M. 360, 993 P.2d 74 (recognizing that "there is established precedent interpreting Article II, Section 10 more broadly than its federal counterpart"). However, Defendant has failed to develop this argument by articulating any rationale for interpreting the phrase "reasonable suspicion" more stringently under the New Mexico Constitution than under the federal constitution or

17

by explaining how our analysis should differ under the state constitution so as to afford him heightened protection. *See State v. Garcia*, 2002-NMCA-050, ¶ 9, 132 N.M. 180, 45 P.3d 900 (recognizing that even though the defendant argued that the search was unconstitutional under the New Mexico Constitution, he failed to explain how the Court's analysis should differ under the state constitution and therefore, for purposes of the opinion, the Court would "assume, without deciding, that the analysis is the same under both [the state and federal] constitutions"). Therefore, we decline to broaden our analysis to consider whether the definition of reasonable suspicion might be more stringent under Article II, Section 10 of the New Mexico Constitution. *See Walters*, 1997-NMCA-013, ¶ 9 (refusing to consider the defendant's assertion that "he was subjected to an unreasonable seizure under both the state and federal constitutions, [because] he advance[d] no separate analysis under the New Mexico Constitution, nor d[id] he argue that the state constitution afford[ed] any greater protection in this respect than the United States Constitution").

**CONCLUSION**

As the stop and investigation of Defendant was justified, Defendant was not entitled to a suppression of the evidence obtained as a result of the stop. We affirm the denial of Defendant's motion to suppress and affirm his convictions.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**

19