This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                        **NO. 30,367**

**TONY ALLEN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G.W. Shoobridge, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

Defendant Tony Allen appeals his convictions for possession of drug paraphernalia and possession of a controlled substance. He raises four issues on appeal. He contends that the trial court erred in denying his motion to suppress evidence on the basis that the underlying traffic stop was pretextual and impermissibly expanded. Defendant further argues that his trial counsel was ineffective and that the district court erred in not dismissing the charges due to the State's failure to timely disclose a dashcam video of the incident. Because we conclude that the stop was neither pretextual nor impermissibly expanded, that Defendant did not make a prima facie claim of ineffective assistance of counsel, and that the district court properly cured the State's failure to timely disclose the dashcam video, we affirm.

**BACKGROUND**

**The Traffic Stop**

On the night of August 4, 2008, while on burglary patrol, Sergeant Nathan Walker of the Hobbs Police Department observed Defendant driving with a broken headlight and initiated a traffic stop. Sergeant Walker approached the vehicle and requested Defendant's license and registration. Sergeant Walker then returned to his vehicle and ran Defendant's name through dispatch to check whether Defendant had any outstanding warrants.

Soon after, Deputy John Martinez of the Lea County Sheriff's Department joined Sergeant Walker at the scene after hearing Defendant's name over the radio during the warrant check. Deputy Martinez testified that he was only a few blocks away from the stop and drove to the scene because he wanted to talk to Defendant about a separate investigation and possibly enlist Defendant as a confidential informant. Upon arriving at the scene, Deputy Martinez received Sergeant Walker's permission to speak with Defendant. Deputy Martinez then approached Defendant's vehicle and asked him to step out. Defendant exited the vehicle and walked with Deputy Martinez to the back of Sergeant Walker's patrol unit to discuss the separate investigation.

While it is unclear from the testimony at trial, at some point between Deputy Martinez's arrival on the scene and Defendant's discussion with Deputy Martinez, dispatch notified Sergeant Walker that Defendant had a "hit" for an outstanding warrant. Sergeant Walker then handcuffed Defendant and told him that he was being detained pending confirmation of the warrant. Deputy Martinez asked Defendant whether he "had anything" on him, and Defendant responded that he had a "meth pipe" in his pocket. Neither officer retrieved the pipe from Defendant's pocket. Instead, Sergeant Walker asked Officer Stanley Jordan, who had arrived on the scene to assist Sergeant Walker in accordance with police department procedures regarding

3

nighttime traffic stops, to detain Defendant in his patrol unit until the warrant could be confirmed.

According to Officer Jordan's testimony, as he escorted Defendant to his patrol unit, Officer Jordan asked Defendant whether he had knives, guns, or "anything that would poke" the officer. Defendant told Officer Jordan that he had a glass pipe in his front pocket. Officer Jordan retrieved the pipe from Defendant's pocket, recognized it as a pipe used to smoke methamphetamine, and placed Defendant under arrest for possession of drug paraphernalia. Officer Jordan then began searching Defendant's other pockets and testified that as he did so, Defendant began fidgeting with his right front pocket. Officer Jordan then testified that he saw Defendant drop a clear plastic bag containing a "crystalline substance" on the ground as Officer Jordan was placing Defendant in his patrol unit. Officer Jordan retrieved the bag and tested the crystalline substance using a field test kit. The crystalline substance tested positive for the presence of methamphetamine.

Defendant was charged with possession of a controlled substance and possession of drug paraphernalia. However, Defendant was neither issued a citation for the headlight violation, nor arrested in connection with the outstanding warrant because it was later shown to be invalid.

**Procedural History**

4

Defendant's trial was initially scheduled for April 16, 2009. On the morning of trial, Defendant moved for dismissal on the basis that the State had withheld exculpatory evidence, namely Sergeant Walker's dashcam video of the incident. Rather than dismiss the case, the district court ordered the State to produce the video or show that no video existed and rescheduled the trial for October 19, 2009. The prosecution subsequently located and produced a copy of the video to Defendant.

The trial commenced in October. Following jury selection, Defendant, for the first time, moved to suppress evidence connected with the stop, arguing that the stop was pretextual under *State v. Ochoa,* 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143. The district court expressed reservation at the untimeliness of Defendant's motion but permitted Defendant to develop facts during trial that might support a finding of a pretext.

During the State's case in chief, the State sought to admit both the pipe and the methamphetamine recovered from Defendant. Defendant objected to the admission of the pipe on the chain of custody grounds, but did not raise any objections to the State's admission of evidence on the basis of *Ochoa.* Following conclusion of the State's case, Defendant renewed his motion to suppress under *Ochoa* and further argued that Deputy Martinez impermissibly expanded the scope of the initial stop by asking Defendant to exit the vehicle to discuss the unrelated investigation. The

district court denied the motions both on the merits and because the motions were untimely. Defendant again renewed the motion to suppress following the conclusion of Defendant's case, and the district court again denied the motion. Defendant was subsequently convicted on both counts and now appeals.

**DISCUSSION**

Defendant raises four arguments on appeal. He argues that the court erred in denying the motion to suppress because the stop was both pretextual under *Ochoa,* 2009-NMCA-002, and impermissibly expanded beyond its initial scope in violation of the Fourth Amendment of the United States Constitution and the N.M. Const., art. II, § 10. Defendant further argues that if we conclude that his trial counsel did not preserve an argument under the New Mexico Constitution in regard to the alleged expansion of the traffic stop, then we should also conclude that he received ineffective assistance of counsel. Finally, Defendant argues that the court erred in not dismissing the charges against Defendant, or alternatively, in admitting Sergeant Walker's dashcam video, due to the State's failure to timely produce the video to the defense under the rule announced in *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

**Standard of Review**

A district court's ruling on a motion to suppress presents a mixed question of law and fact. Therefore, we apply a two-part review to a district court's decision

regarding a motion to suppress. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. We review any factual questions under a deferential substantial evidence standard, and we review the application of the law to the facts de novo. *Id.* In so doing, "we review the facts in the light most favorable to the . . . district court's factual findings so long as substantial evidence exists to support those findings." *Id.*

**Preservation**

As an initial matter, we must first address the State's argument that Defendant's acquiescence to the admission of evidence in the State's case in chief constituted a waiver of the claims he now asserts on appeal. Defendant raised his argument under *Ochoa* for the first time following jury selection and his argument regarding the expansion of the traffic stop during his renewed motion to suppress after conclusion of the State's case in chief. The district court deferred ruling on the motion to suppress under *Ochoa* until Defendant was given an opportunity to lay a factual predicate that would support a finding of pretext. The district court ultimately denied the motions to suppress on both the merits and the untimeliness of the motions. However, since we conclude that there was not a sufficient factual predicate developed to support a finding of pretext and that the length of the traffic stop was not measurably extended beyond the time needed for Sergeant Walker to confirm whether

Defendant's warrant was valid, we assume without deciding that Defendant preserved these issues for appeal.

**Pretext**

In *Ochoa*, this Court held that pretextual stops are unconstitutional under Article II, Section 10 of the New Mexico Constitution and that evidence obtained from a search incident to a pretextual stop should therefore be suppressed. *Ochoa*, 2009-NMCA-002, ¶ 42. Under the totality of the circumstances test we adopted, we explained that the district court must first determine whether there was reasonable suspicion or probable cause for the stop and then decide if the officer's actual motive for the stop was unrelated to the initial justification for the stop. *Id.* ¶ 40. The burden of proof then shifts to the defendant to show pretext based on the totality of the circumstances. *Id.* "If the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual." *Id.* Where the defendant does show sufficient facts indicating an unrelated motive for the stop unsupported by reasonable suspicion or probable cause, a rebuttable presumption arises that the stop was pretextual. *Id.* The State can rebut this presumption by establishing, based on the totality of the circumstances, that the officer would have stopped the defendant regardless of the unrelated motive. *Id.* A district court's totality of the circumstances

determination includes "considerations of the objective reasonableness of an officer's actions and the subjective intent of the officer—the real reason for the stop." *Id.* ¶ 39.

In this case, Sergeant Walker's undisputed testimony at trial was that Defendant was driving with a broken headlight on the night he was pulled over. Therefore, the State met its burden of establishing that Sergeant Walker had reasonable suspicion that Defendant was committing a traffic violation. *See* NMSA 1978, § 66-3-802 (1978).

Defendant argues, however, that Sergeant Walker's real motivation for the stop was to allow Deputy Martinez an opportunity to question Defendant in an unrelated burglary investigation. In support of this contention, Defendant points to a number of facts: (1) Defendant was asked to step out of the vehicle before dispatch alerted Sergeant Walker of a possible warrant, (2) Defendant was never cited for the headlight violation, (3) the number of police cars that descended on an otherwise "simple traffic stop," (4) Sergeant Walker was on a special burglary patrol assignment that evening, and (5) Sergeant Walker was not in his usual police issued uniform. As explained below, we are unpersuaded that these facts, in light of the totality of the circumstances, were sufficient to support a finding of pretext.

At trial, Sergeant Walker testified that the only reason he pulled Defendant over was for the broken headlight. Sergeant Walker's dashcam video shows him

9

immediately initiate the traffic stop after observing Defendant drive by. Furthermore, while Sergeant Walker was on a special burglary assignment that evening and therefore not in his usual uniform, he was still patrolling in a marked police vehicle and attired in a department issued bullet-proof vest with "Hobbs Police Department" written on the front and back. Of particular importance, however, is the absence of any testimony at trial indicating that Deputy Martinez requested Sergeant Walker to initiate the traffic stop or that Sergeant Walker was even aware that Defendant was the driver of the vehicle and wanted for questioning in an unrelated investigation. Without establishing that Sergeant Walker had an unrelated motive at the time of the stop, we are unable to conclude that Sergeant Walker's stop was pretextual. Therefore, viewing the facts in the light most favorable to the district court's ruling, we conclude that Defendant did not present a sufficient factual predicate entitling him to a finding of pretext.

**Expansion of the Traffic Stop**

**Defendant Failed to Preserve His Argument Under the New Mexico Constitution**

As recently clarified in *State v. Leyva*, a defendant must properly preserve an argument under our state constitution in order for us to consider it on appeal. 2011-NMSC-009, ¶ 36, 149 N.M. 435, 250 P.3d 861. Where, as here, the defendant is seeking the broader protections afforded defendants against unreasonable searches and

10

seizures under Article II, Section 10, we must first determine whether the defendant properly preserved this argument below. *See State v. Ketelson*, 2011-NMSC-023, ¶ 10, 150 N.M. 137, 257 P.3d 957 (stating that "as an initial matter, we must determine whether our analysis is confined to the Fourth Amendment or whether [the d]efendant properly preserved his argument under Article II, Section 10"). We conclude that Defendant did not.

The first time Defendant raised his argument regarding the impermissible expansion of the traffic stop was during his renewed motion to suppress at the close of the State's case in chief. It is undisputed that Defendant did not cite, or even mention, the New Mexico Constitution in support of his motion. Rather, Defendant relied on *City of Albuquerque v. Haywood*, 1998-NMCA-029, 124 N.M. 661, 954 P.2d 93, *overruled by Leyva*, 2011-NMSC-009. *Haywood* involved a suppression claim under the Fourth Amendment of the United States Constitution, not under Article II, Section 10 of the New Mexico Constitution. *Haywood*, 1998-NMCA-029, ¶¶ 2, 9. At the time of Defendant's trial, and when *Haywood* was decided, New Mexico courts interpreted both the federal and state constitutional provisions to prohibit police officer questioning on matters not reasonably related to the circumstances justifying the stop. *Id.* ¶ 15. However, in *Levya*, 2011-NMSC-009, ¶ 17, our Supreme Court recognized that beginning in 2005 and reaching fruition in

11

2009, the United States Supreme Court adopted a bright-line approach to investigative detentions which focused on the length of detention and not on the subject of the questioning. *See Ariz. v. Johnson*, 555 U.S. 323, 333 (2009); *Muehler v. Mena*, 544 U.S. 93, 100-01 (2005). Thus, while New Mexico had not explicitly recognized this change in federal law at the time of Defendant's trial, the federal Fourth Amendment analysis had clearly departed from New Mexico precedent regarding our state constitutional analysis of investigative detentions. Therefore, since Defendant failed to "assert[] the constitutional principle that provides the protection sought under the New Mexico Constitution," *Leyva*, 2011-NMSC-009, ¶ 40 (internal quotation marks and citation omitted), Defendant has failed to preserve his arguments under Article II, Section 10 of the New Mexico Constitution. We accordingly review his arguments under the federal Fourth Amendment analysis the United States Supreme Court had adopted at the time of Defendant's trial. *See Leyva*, 2011-NMSC-009, ¶ 49 ("Where a state constitutional *provision* has previously been interpreted more expansively than its federal counterpart, trial counsel must develop the necessary factual base and raise the applicable constitutional *provision* in trial court.").

**Fourth Amendment**

"The Fourth Amendment guarantees the right of the people to be free from unreasonable searches and seizures." *Id.* ¶ 8. "It is well established that the initiation

12

of a traffic stop constitutes a seizure of the vehicle's occupants." *See State v. Portillo*, 2011-NMCA-079, ¶ 12, 150 N.M. 187, 258 P.3d 466, *cert. denied*, 2011-NMCERT-006, 150 N.M. 764, 266 P.3d 633. However, "[a]n officer's continued detention of an individual, while lawful at the outset, may become unlawful if the officer unjustifiably expands the scope of the detention." *State v. Funderburg*, 2008-NMSC-026, ¶ 14, 144 N.M. 37, 183 P.3d 922. In determining whether an officer has impermissibly expanded the scope of a detention under the Fourth Amendment, the proper inquiry is "whether an officer's traffic stop questions extended the time that a driver was detained, regardless of the questions' content" beyond the time needed to investigate the circumstances that initially justifed the stop. *Leyva*, 2011-NMSC-009, ¶¶ 17, 19 (internal quotation marks and citations omitted); *see id.* ¶ 15 (stating that "unrelated questions are permitted so long as they do not measurably extend the length of the stop" (internal quotation marks and citation omitted)). While the content of an officer's questioning is not examined under this standard, "[e]xtended detentions caused by questioning unrelated to the initial purpose of the stop continue to violate the Fourth Amendment." *Id.* ¶ 22.

Following the traffic stop, Sergeant Walker obtained Defendant's license and ran a wants and warrant check as part of his investigation into the traffic violation. A check for outstanding warrants is considered to be within the scope of a valid traffic

13

stop. *See State v. Rubio*, 2006-NMCA-067, ¶ 14, 139 N.M. 612, 136 P.3d 1022 ("After obtaining [license, registration, and insurance] documents, the officer may lawfully run a computer check, directly or indirectly by contacting dispatch . . . . We have stated that this check may include a wants and warrants check." (citations omitted)). Deputy Martinez then approached Defendant and asked him to exit the vehicle while Sergeant Walker was checking on Defendant's status. Defendant argued at trial that it was an impermissible extension of the stop to ask him to exit the vehicle to discuss the unrelated investigation. However, because we do not look to the actual questions asked but whether the stop was measurably extended by the unrelated questions, our focus here remains on the length of time Defendant was detained in order for Sergeant Walker to confirm whether Defendant's warrant "hit" was valid. Importantly, it was as a result of this detention to confirm the warrant, not Deputy Martinez's questions, that Defendant was detained at the scene and admitted to possessing the drug pipe. Thus, because Defendant would have been properly detained pending the warrant confirmation, we conclude that Deputy Martinez's actions in requesting that Defendant exit the vehicle to discuss the unrelated investigation did not measurably extend the length of Defendant's detention.

**Ineffective Assistance of Counsel**

14

Defendant argues that his trial counsel's failure to properly preserve Defendant's rights under the New Mexico Constitution constitutes ineffective assistance of counsel. We review a claim for ineffective assistance of counsel de novo. *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532. In order to establish a prima facie claim for ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) he suffered prejudice in that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Patterson v. LeMaster*, 2001-NMSC-013, ¶¶ 19, 28, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted).

On the basis of the record before us, we are not persuaded that Defendant has established a prima facie claim of ineffectiveness. A defendant must affirmatively prove prejudice. *State v. Quiñones*, 2011-NMCA-018, ¶ 30, 149 N.M. 294, 248 P.3d 336, *cert. denied*, 2011-NMCERT-001, 150 N.M. 559, 263 P.3d 901. Defendant supports his assertion of prejudice by merely stating that had trial counsel properly cited to the New Mexico Constitution, "it is likely, based on the facts available from the testimony at trial [, he] would have prevailed." Without more, we are unable to conclude that trial counsel's actions prejudiced Defendant, especially where, at the time of Defendant's trial, our own Supreme Court had not yet formally recognized the

15

recent changes in federal Fourth Amendment analysis. In concluding that Defendant has not made a prima facie claim of ineffectiveness, we do not preclude Defendant from pursuing his claim through habeas corpus proceedings. *See State v. Bernal*, 2006-NMSC-050, ¶ 36, 140 N.M. 644, 146 P.3d 289 (rejecting the defendant's ineffectiveness assistance of counsel claim but stating that the defendant could pursue a habeas corpus proceeding "should he be able to garner evidence to support his claims").

**The State's Failure to Disclose the Dashcam Video**

Pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967) and *State v. Boyer*, 103 N.M. 655, 658-60, 712 P.2d 1, 4-6 (Ct. App. 1985), Defendant argues that the district court erred in failing to dismiss the charges against him following the State's failure to timely disclose Sergeant Walker's dashcam video. We review a district court's decision with regard to discovery for abuse of discretion. *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701.

In determining whether late disclosure of evidence requires reversal, we consider the following factors: "(1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence[,] (2) whether the improperly non-disclosed evidence was material[,] (3) whether non-disclosure of the evidence

prejudiced the defendant[,] and (4) whether the [district] court cured the failure to timely disclose the evidence." *Id.* ¶ 8 (internal quotation marks and citation omitted).

In response to Defendant's motion to dismiss the charges, the district court vacated the original trial date of April 16, 2009, and ordered a continuance until October 19, 2009, during which time the state located and produced a copy of the video. Thus, even if the State failed to initially provide the video in a timely manner, we conclude that the district court did not abuse its discretion in granting a continuance to cure the State's late disclosure, especially where Defendant had over five months to review the video and prepare for trial. Rule 5-505(B) NMRA (stating that a continuance is among the proper means of curing a late disclosure of evidence).

Defendant further argues that the district court erred in admitting the dashcam video at trial. Since Defendant himself moved for the video's admission, we will not consider this claim of error on appeal. *See State v. Urioste*, 2011-NMCA-121, ¶ 44, 267 P.3d 820 (stating that the "invited error provides no grounds for appeal").

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____

                              **CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**


_____
**TIMOTHY L. GARCIA, Judge**